# MARYLAND REPORTS.

## APRIL TERM, 1866.

### THE GAS-LIGHT COMPANY OF BALTIMORE, *vs.* JOSEPH S. COLLIDAY.

CONTRACT: GAS COMPANIES,—THEIR OBLIGATIONS: DAMAGES,—MEASURE OF.—J. S. C. sued the Gas-Light Company for the breach of a contract to supply with gas his dwelling and store, No. 465, &c.,—the declaration containing a count in *trespass on the case* for damages consequent upon the act complained of. The contract was made in August 1852 by the plaintiff's signing the published rules and regulations of the company for the premises No. 465, which declared the terms upon which the public would be supplied with gas. In these the signer consents that gas shall be introduced into the premises described, "and that in default of payment for gas consumed in *said premises*, the flow of gas shall be stopped until the bill be paid," &c. In December 1857, J. S. C. entered into a similar contract with the defendant, differing therefrom in certain minor details, for the supply of gas to another tenement, No. 461, &c., separated from No. 465, by a small lot and tenement belonging to another person than the plaintiff, but which he used in connection with his business. Separate bills were rendered for Nos. 461 and 465, and regularly paid to February 1st, 1861, when, that for No. 465 was paid, but that for No. 461 disputed as excessive, and payment refused. In June following, the defendant cut off the supply of gas from No. 461. For the quarter ending August 1st, 1861, a bill was rendered for No. 465, which for the first time contained a charge for arrears of gas supplied to No. 461. The plaintiff tendered payment of the bill as to No. 465, but again refused to pay as to 461, and the said tender was refused by the company, who having failed to obtain possession of the meter, on the 8th of September following, cut off the supply of gas from No. 465. It was proved by the Secretary of the company on cross-examination, "that the reason, and

the only reason, why the service pipe to house No. 465 was cut, was the failure of the plaintiff to pay for the gas to house No. 461." HELD:

1st. That viewing the chartered powers of the defendant, the peculiar nature of the article to be supplied, the peculiar mode of furnishing it, and the exclusive control which the defendant possessed in its manufacture for the public use, that the defendant was bound by the contract to furnish gas to one who had made the necessary preparation, and incurred the expenditure for its use, and who had contracted for its introduction by signing the terms and regulations of the company, as long as the company manufactured the article for the public use, and the customer paid for the supply to the property described in the contract and complied with its other terms.

2nd. That where several contracts are made between the same parties for different pieces of property, each requiring its own meter, as in this case, a failure to comply with any terms in relation to one, furnishes no excuse or ground to the company to withhold the gas from the other.

3rd. There being an express contract in writing between the parties in this case, the right to discontinue does not depend upon circumstances and facts from which to imply the existence of a contract and its terms, as in the case of *Hoddeson, &c., vs. Hazlewood,* 95 *Eng. C. L. Rep.,* 239.

4th. That in estimating the damages resulting from the act complained of in the declaration, the jury may consider the deterioration, if any they find, in the value of said property or premises, for sale or for rental, and the cost of removing the gas fixtures and restoring the premises.

APPEAL from the Court of Common Pleas of Baltimore City:

This was an action instituted on the 3rd day of January, 1862, by the appellee against the appellant, upon a contract by which the latter agreed to supply the former with gas for certain premises described in the contract. The declaration also contained a count in *trespass on the case* for damages alleged to have resulted from the act complained of. The facts are stated in the opinion of this Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and WEISEL, J.

Gas-Light Co. *vs.* Colliday.

*Geo. C. Maund and A. Sterling* for the appellant argued:

1st. That the contract offered in evidence, to supply the premises No. 465 with gas, was for no definite period and was terminable by either party on reasonable notice, and the facts in evidence were sufficient proof of reasonable notice, and the cutting off the supply was in accordance with the contract. *Hoddison Gas Co., vs. Hazlewood,* 6 C. B., (N. S.) 239. (95 *Eng. C. L. Rep.,* 238). And see the Act of 1860, ch. 291, to show that the appellant, legally, has no monopoly as contended by the appellee.

2d. That the contracts in evidence as to the supply of gas, both at No. 461 and 465, constituted an engagement with the plaintiff as an individual to sell him and supply him with gas, furnished or deliverable at two different places for no specified time, and was terminable by defendant on the exhibition of such conduct by the plaintiff, in his dealing with the defendant, as made him an unprofitable and troublesome customer, or such conduct as would justify a refusal to sell goods on running account; and the deliberate refusal of the plaintiff to pay part of his debt to the defendant for gas sold and delivered to him, though at different points of illumination, was a sufficient legal justification to the defendant to decline to supply the plaintiff with more gas, to be delivered in future, until he had paid for that already consumed. *Norwich Gas-Light Co., vs. Norwich City Gas Co.,* 25 *Conn.* 19. *Regina vs. White,* 20 *Eng. L. & E. Rep.,* 585, (proving that gas is the subject of larceny, as goods and chattels.) *Hoddison Gas Co., vs. Hazlewood,* and Act of 1860, ch. 291, *supra.*

3d. Because the house No. 461 and the house No. 465 being both owned by the plaintiff and occupied by him in the exercise of his own business, the contract to take and supply gas at No. 461, entered into in 1857, was a contract to supply gas to another part of the same premises before contracted to be supplied in 1855, and the bills in evidence only show that a

separate account was kept for each meter, which was a mere distribution of the machinery for supply, and that the premises were the same, and the default in paying part of the bills due was a default as to the whole premises.

4th. Because, both by the rejection of the defendant's first prayer and by the instructions the Court neglected and took from the jury, the regulation 10, of the company, being part of the contract, that " the Company and its agents shall at all times have free access into the premises lighted with gas for the examination of the apparatus and the removal of the meter," and also regulation 15, " the Company reserves the right at any time to cut off the service pipe, if they shall find it necessary to do so, in order to protect the works against abuse or fraud;" and also the evidence that the plaintiff, before the supply of gas was cut off from No. 465, refused to allow the agents of the defendant admission to the place where the meter was, and prevented them from examining the apparatus as, by rule 10, they had a right to do, and the further evidence that before the supply of gas has been cut off the plaintiff had removed the meter from No. 465, which was the property of the Company, and had detained it from them; and thus, before any of the acts complained of had been done by the defendant, had destroyed the contract by taking away the means of measurement provided by the contract, so that gas could not be supplied to the premises according to the contract, and that the plaintiff had taken possession of and abused the machinery of the defendant. And herein the appellant insists that these acts of the plaintiff, at a time when the defendant had not done any act nor committed any breach of the contract, were a breach of contract on the part of the plaintiff, and constituted a bar to the plaintiff's recovery; that after the removal of the meter by plaintiff they had a right to cut the service pipe, under rule 15, to protect the works from abuse and fraud;

that the cutting of the service pipe, after such refusal by the plaintiff to admit the defendant's agents into the premises, and after the meter had been removed and detained by the plaintiff, could not constitute a breach of contract by the defendant, whatever other motive or reason they might have had for such cutting off; and that at the time of such cutting off, the plaintiff had put it out of the power of the defendant to comply with the contract or to furnish gas in the mode of measurement and supply therein provided for. That said acts of the plaintiff were the first breach, and that thereafter the contract could not be insisted on by him. *Parker Co., vs. O'Hern,* 8 *Md. Rep.* 197. *Harris vs. Bradley,* 9 *Ind.,* 166. *Haskell vs. McHenry,* 4 *Cal.,* 411. *Webster vs. Engall,* 5 *Gilman,* 298. 2 *Smith's Leading Cases,* 27. *Chapin vs. Norton,* 6 *McLean,* 500. *Wright vs. Haskell,* 45 *Maine,* 489, 492. *Allen vs. Webb,* 4 *Foster's R.,* (*N. H.*) 281.

The appellant's counsel also urged that the Court below erred in rejecting the second prayer and in that part of the instruction which relates to the measure of damages, for the following reasons:

That the proper measure of damages, if the plaintiff had a right to recover, was the actual damage the plaintiff had sustained by the deprivation of gas up to the time of bringing his action. That on the contract declared on, and proved, the plaintiff had a continuing right of action if broken; that the contract was with the plaintiff as an individual, and the supply was cut off for reasons personal to him which did not apply to any vendee or lessee of the plaintiff; that the sale or rental by him of No. 465 would have separated the same from any connection with No. 461, and the bill for 461 could not have been enforced against the vendee or lessee of No. 465, and on the evidence the plaintiff's vendee or lessee would have got the gas from defendant, and therefore the acts of the defendant could not affect the value of the property for sale or

rent. But the Court leaves it to the jury to say that the house No. 465 was debarred of gas for all future time, and on that assumption to say what would be the depreciation of the value of that house in the market, and this as the mere result of the cutting off proved, and without any evidence that the house was to be debarred of gas for all time.

The appellant's counsel further insisted that the effect of this was to give the plaintiff damages for depreciation, although he might sell the house for its full value, and although he or his vendee might afterwards get the very thing for the want of which damages were awarded, and herein that there could be no "depreciation of the value for sale or rental," if the vendee or lessee could get gas; that the depreciation of value for sale or rent could only occur on the supposition that the company would refuse to contract with Colliday's vendee or lessee to supply him or them with gas, of which there was and could be no evidence, but of which there was evidence to the contrary; and if the vendee or lessee could contract for and get gas he would suffer no loss and would pay Colliday the full value, and he, by sale or rent, could therefore suffer no loss; that the fact that the company had refused to supply Colliday with gas at 465 did not prove or tend to prove that they would refuse to supply his vendee or lessee, but that by the "rules" in evidence it appeared that any new proprietor or tenant had to make a new contract for gas, and Colliday's rights on this contract were not assignable, and did not go with the house; and for these reasons they insisted that the rule of damages was unreal, fictitious, speculative, contrary to law, inequitable and had no evidence to sustain it.

That damages to the permanent value of property are not recoverable when the breach or wrong complained of affects the plaintiff only, and does not affect the property in the hands of a vendee or lessee, and that such damages, while

they may be given where the property is affected in the hands of a vendee or lessee, can only be given in actions of tort and cannot be given in an action on a contract, to which the vendee or lessee is no party, and which does not run with the land or pass with the interest therein, or vest any rights in him; for if the things to be got by such a contract are of advantage to the vendee or lessee, he must make a new contract therefor; and that such is the contract in this case, and there was no evidence of any effect on a vendee or lessee, nor could there be in law, but there was evidence to the contrary, which the Court by its ruling refused to allow the jury to consider.

They also urged that the Court below erred in rejecting the second prayer, because:

It being admitted that the bill which Colliday refused to pay was a just bill, if the defendant cut off the supply from No. 465, though without legal right, yet if Colliday could have got the gas again by paying that bill, then the amount of that bill being the only thing to be overcome to get the gas, was the true measure of damage for the cutting off, in addition to any actual damage to Colliday himself up to the time of suit brought, which might be proved to have occurred; and because, at all events, as the Court left the jury to find a permanent depreciation in the value of the house, the facts stated in the plaintiff's second prayer ought to have been left to the jury as an element of calculation as to whether there was or would be any permanent depreciation; for if Colliday himself could have got the gas on the payment of the bill in dispute, then as the bill was just, although he might recover for actual damage, yet he could not and ought not to have recovered for permanent depreciation, and the Court, by its action, compelled the jury to find permanent depreciation.

They also urged that the Court below erred in allow

ing the jury to find damages "for the removal of the gas fixtures and the restoration of the premises," because on the evidence such removal was useless, and by the proof of the plaintiff, the taking out the pipes would injure the home and be costly and absurd, and yet the word "fixtures" may include all these, and thus give the plaintiff damage for the expense of doing something, which on the evidence he had not done, did not intend to do, and which no sensible man would do; that even the removal of the gas jets and burners was, on the evidence, not necessary, and there was no proof that the plaintiff intended to remove them, and such removal would have been an injury to the value of the house for rental or sale; and that the language of the Court is uncertain and calculated to mislead the jury, as the words "remove the fixtures and restore the premises," may be construed to mean to put the house in the same state it was in before gas pipes of any kind had been introduced, which would leave the jury to give the cost of tearing down part of the house and rebuilding it.

*Wm. A. Fisher*, for the appellee, argued:

1st. That in view of the nature of the charter of the appellant, and the rights granted to it by the Ordinance of the Mayor and City Council of Baltimore, the character of its business and the monopoly which it practically enjoys, the relations of parties to the contract toward each other, the obvious purpose of the appellee in entering into such a contract, and the expense to which he had been induced to submit at the invitation of the appellant in putting into his premises the necessary pipes and fixtures; and in view, also, of the terms of the printed contract, (and especially Articles Nos. 13 and 15,) the appellant was bound to supply the gas to the appellee for house No. 465, so long as it should continue its manufacture for public consumption, and the appel-

lee should continue to pay for the supply to such house, and comply with the terms of the contract as to that house; that, at the most, the appellant could only claim that the contract being silent as to the precise time for which the supply was to be continued, it was only bound to supply for a reasonable time; and if the latter construction should be adopted, the question of what is a reasonable time, being one entirely dependent upon the circumstance of each case, the Court would here hold that it was reasonable gas should be supplied so long as the manufacture continued, or at any rate for a period reasonably sufficient to compensate the appellee for the changes made in his premises. *Shephard vs. Milwaukie Gas Co.*, 6 *Wisconsin Rep.*, 539. 2 *Pars. on Cont.*, 12. Act of 1816, ch. 251,—Charter. Ordinance June 17, 1816.

2nd. That the contracts for the supply of gas to houses Nos. 461 and 465, Fayette street, respectively, were separate and independent, made at different times, and containing stipulations in some respects different, and the appellant had no right, therefore, to violate its earlier contract as to house No. 465, because the appellee chose to differ or litigate with it as to his rights under the contract for house No. 461.

3rd. That in view of the particular circumstances of the case, the general use of gas, and the great expense or impossibility of its manufacture by the appellee at the time the supply was cut off, the manner of improving and renting houses in the city of Baltimore, and the wrongful, deliberate and apparently final refusal of the appellant to supply the house No. 465, the Court properly laid down the rule of damages. *Scott vs. Bay*, 3 *Md. Rep.*, 444.

4th. The second prayer of the appellant is defective:

1. Because there is no evidence, whatever, from which the jury could infer a willingness on the part of the appellant to supply gas to No. 465, provided the appellee would pay the disputed bill.

2. Because even if there were such evidence as the appellant has sought to show, to coerce the appellee into an abandonment of his position as to the bill for No. 461, by means of its breach of contract for No. 465, it could not seek to diminish the damages by showing a willingness to enter into a new contract, provided the appellee would yield to its illegal pretensions.

5th. The appellant having before, and at the time that it cut off the gas from No. 465, assigned as a reason for so doing only the refusal of the appellee to pay the disputed bill for No. 461, cannot now be heard to say that it did so owing to the failure of the appellee to comply with some article or articles of the contract, on which it then made no claim or demand. *Shephard vs. Milwaukie Gas Co.*, 11 *Wisconsin*, 234.

WEISEL, J., delivered the opinion of this Court:

We are to inquire, on this appeal, whether the Court below erred in its instruction to the jury, as to the plaintiff's right to recovery, and the rule for estimating his damages if entitled to the verdict.

The appellee, who was the plaintiff below, sued the Gas-Light Company of Baltimore in the Court of Common Pleas for that city, for the breach of a contract between them for supplying with gas his dwelling and store, on the north-east corner of Schroeder and Fayette streets, No. 465, the breach consisting in severing the pipe which conveyed the gas to the premises from the main pipe, although all dues on the contract had been paid or tendered. The declaration also contained a count in trespass on the case for damages consequent upon the act complained of.

No question was made upon the pleadings or the evidence.

It appears from the record that the contract was made for the premises in question, in August 1852, by the plaintiff's

signing the rules and regulations of the company, he having first placed the necessary pipes and fixtures in the house for the admission and consumption of the gas.

He, also, in December, 1857, entered into a similar contract with the defendant for the supply of gas to another tenement on Fayette street, No 461, separated from the former by a small lot and dwelling belonging to another person than the plaintiff, but which he used in connexion with his business. The rules and regulations signed for the premises No. 461 were, in some particulars, variant from the other contract. Separate bills for gas for each house had been regularly made out and presented, quarterly, to the first of February, 1861, when that for No. 465 was paid, but the other, for 461, was disputed as excessive, and payment refused. This dispute and refusal to pay were continued to June following, when the company cut off the gas from it, with a claim for the arrearages due upon it. In the mean time a separate bill had been rendered for No. 465 to 1st May 1861, and was paid. For the quarter ending 1st August 1861, another bill was rendered, which, for the first time, contained a charge for arrears of gas supplied to No. 461 to June 3d. The plaintiff tendered payment of what was due as rendered on No. 465, but refused again to pay for the arrears on No. 461.

This tender was refused by the company upon the ground that it was entitled to the payment of the bills for both houses as the condition of continuing to furnish gas for No. 465, and the plaintiff was notified that if he did not pay the disputed bill for house No. 461, the supply of gas would be cut off from the other. This was accordingly done on the 8th September following by the company's severing the service pipe from the main pipe in the street, five feet from the curb stone.

There was proof that the gas-meter, (an instrument for measuring and ascertaining the quantity of gas consumed,)

for house No. 461 was in good condition and registered correctly, and that the bill for the disputed quarter was correctly made out from the figures indicated by the register on the face of the meter; and that this bill was admitted to be true and correct, by the plaintiff's counsel, for the purposes of this case. It was further proved that after the notice to the plaintiff, as already stated, and his declaration that he never would pay the disputed bill for house No. 461, because it was excessive, the company proceeded, by its agent, to remove the meter from the house No. 465, but that the plaintiff refused to admit him to the place where it was; that a writ of replevin for the meter was then resorted to, and search made for it, but it could not be found by the officer in charge of the writ; and that thereupon the service pipe was severed as before stated. The meter was the property of the company, but affixed to the pipes at a certain cost to the consumer. It was distinctly proved, however, by Mr. Brown, the secretary of the company, on his cross-examination, " that the reason, and the only reason, why the service pipe to house No. 465 was cut, was the failure of the plaintiff to pay for the gas to house No. 461."

The " Rules and Regulations" signed by the plaintiff when he applied for gas for house No. 465, contain the stipulations of the contract. They are declared to have been adopted by the Directors for the introduction of gas-fittings, and the terms upon which the public would be supplied with gas, and were ordered to be printed in pamphlet form for distribution, and a copy enrolled in a book in the office to which the names of all applicants for a supply of gas should be subscribed. The applicant in these consents that gas should be introduced into the described premises, "and that in default of payment for gas consumed in *said premises,* he also consents that the flow of gas shall be stopped until the bill be paid." The other material provisions in these rules are the following:

Rule 2, provides for the supply of the gas by the meter, and for changing the meter if found defective, and for arriving at the quantity consumed by other modes when the meter ceases to register.

No. 4, prescribes the costs to the consumer for the service pipe and the meter, to be furnished and put up by the company.

No. 5. "The company shall have the authority, whenever it may deem it necessary, to substitute alcohol for water in the meter."

Nos. 6 and 7 regulate the size and character of the tubing, fittings and screws in the house to be provided and put up by the proprietor of the building, and for their examination and approval by the Inspector of the company before gas will be supplied.

No. 8. "The Inspector shall at all times be in readiness to examine the apparatus and premises of applicants, free of charge, on receiving three days' notice."

No. 10. "The company, its inspector and other authorised agents, shall at all times have the right of free access into the premises lighted with gas for the purpose of examining the whole gas apparatus or for the removal of the meter and service pipe."

13. "In default of payment for gas consumed within thirty days after the end of each month, or in case of a leak or injury done to the meter or pipes within the premises of any consumer, the flow of gas may be stopped, until the bill is paid or the necessary repairs are made."

14. "The company reserves to itself the right to refuse to introduce gas into any premises until all arrears due on the said premises shall have been paid."

15. "The company reserves to itself the right at any time to cut off the communication of the service pipe, if they shall find it necessary to do so, in order to protect the works against abuse or fraud."

The plaintiff having entered into the contract, (of which the foregoing are the particulars most important to the inquiry,) for the supply of gas, and having been supplied for a series of years, for house No. 465, until the difficulty arose about the bill for the other premises, the question as to the right of the company to discontinue it under the contract, for cause assigned and proved by the evidence in the bill of exceptions arises, and is to be considered and determined.

The character of the defendant, (the appellant in this appeal,) cannot be overlooked in such an inquiry. The " Gas-Light Company of Baltimore," was incorporated by the Legislature of Maryland in 1816, for the purpose of manufacturing gas and for lighting with it the streets, squares, &c., and the houses and other buildings and places in the city and precincts of Baltimore or elsewhere within the State, with all necessary powers and rights for the purpose under the law and the ordinances of Baltimore, and for raising by subscriptions of stock a capital, and for the holding of real and personal estate of a value adequate to such an undertaking. At the time of the contract in 1852 for house No. 465, the appellant was the only incorporated institution in the city of Baltimore for the manufacture of gas, and therefore it enjoyed a monopoly in this branch of business. Those who were induced to fit their houses for the introduction and use of gas could look only to this company for their supply, and it was upon its proffers and in accordance with its prescribed terms and rules that the necessary tubings and fittings were placed in their houses. In considering the question of the obligation of a party or company of this character to continue the supply of gas to a customer, such matters cannot well be overlooked.

It is very clear in this case that the gas was cut off from the building No. 465, not because the plaintiff had failed to pay for the gas furnished to it as charged by the company,—

not because it was necessary to do so in order to protect the works against abuse or fraud, or for the purpose of repairs, but solely because the plaintiff failed or refused to pay for the arrears of gas to house No. 461. If the defendant had no right to withhold the gas on this account, then its act in severing the service pipe was a violation of the contract for which the plaintiff was entitled to recover. Does this appear?

The contracts for the two houses were separate and distinct, and in no wise dependent. They were entered into at different times, each for its distinct property. The bills had been made out and rendered separately. Each house had its own meter. The terms in one case were different in some respects from those in the other. For the failure to discharge the bill for arrearages on lot No. 461, the gas to that property had been cut off, the company availing itself of its right to do so, reserved in the terms of the contract. The plaintiff had complied with all the terms in the contract respecting the house No. 465, and the defendant continued to manufacture gas for the public, and there was no legal hindrance to supplying it to the property in question. The non-payment on one house and contract constituted no ground, upon a proper construction of the contracts, as this Court thinks, for withholding the gas from the other house. It is our opinion, viewing the chartered powers of the defendant, the peculiar nature of the article to be supplied, the peculiar mode of furnishing it, and the exclusive control which the defendant possessed in its manufacture for the public use, that the defendant was bound by the contract to furnish gas to one who had made the necessary preparation and incurred the expenditure for its use, and who had contracted for its introduction by signing the terms and regulations of the company as long as the company manufactured the article for the public use, and the customer paid for the supply to the property described in the contract, and complied with its other terms.

We are also of opinion that where several contracts are made between the same parties for different pieces of property, each requiring its own meter, as in this case, a failure to comply with any terms in relation to one, furnished no excuse or ground to the company to withhold the gas from the other. As long as the terms in regard to the latter are complied with, the company, continuing its manufacture, is bound to continue the supply of gas to it.

Without adopting or rejecting the views of the Court of Common Pleas in England, in the case of the *Hoddison Gas & Coke Company vs. Hazelwood*, 95 *Eng. C. L. Rep.*, 239, relied upon by the appellant in this case, it is sufficient to say that in this case there is an express contract in writing be-between the parties, and the right to discontinue does not depend upon circumstances and facts from which to imply the existence of a contract and its terms, as in the reported case. It would be going very far for this Court to lay down the principle that the company can discontinue when its convenience or caprice may dictate, even after notice. We would not be prepared to advance such a doctrine even in the case of an implied contract, when one of the parties enjoys, in effect at least, a chartered monopoly from the sovereign power to deal in an article of public use and benefit, and when the citizen, designed to participate in the benefit, has adapted his premises to its introduction, avails himself of the proffered advantage, and complies with all the just and legal requirements of the company.

Some stress was laid upon the conduct of the appellee in reference to the meter, as constituting a breach of the contract by him in the first place and putting it out of the power of the company to continue to him the flow of gas afterwards, and therefore the breach complained of could not be insisted upon. It will be remembered that the removal of the meter was determined upon and attempted by the company as one

means of cutting off the gas for not paying the bill in arrears on house No. 461, and the plaintiff had been so notified. The company then resorted to the other mode of accomplishing the same thing, and it cannot ask to be shielded from responsibility by any conduct of the plaintiff which he may have interposed for his protection against an act which the company had no right to do. Besides, the testimony of Mr. Brown, the Secretary of the company, is a complete answer to the ground taken, and that was, " that the reason, and only reason, why the service pipe to house No. 465 was cut, was the failure of the plaintiff to pay for the gas supplied to house No. 461."

We are therefore of opinion that the act of the appellant in cutting off the gas from the premises No. 465, for the cause assigned, was unauthorized by the terms of the contract, and was a breach of its provisions, for which the appellee, who was the plaintiff below, was entitled to recover, and that the instruction of the Court below was correct.

We see no objection to the rule of damages as laid down in the Court's instruction. There was evidence that the property was a good business stand, calculated to command, with the advantages of water and gas, a certain rent, which would be materially diminished by being deprived of either, and that to restore the property, by cutting off even the projections of the pipes into the rooms, should the owner not choose to remove the pipes themselves, would be attended with a certain expense. The condition which the company asserted as the only one upon which gas would be restored to the premises, was one which it had no right to impose; and unless the company chose to recede from this position, the owner, his tenant or alienee, could avail himself of the improvement only by a compliance with an unauthorised and illegal demand. This operated to depreciate the property to a value below that of surrounding premises which

enjoyed the privileges and benefits of the improvement. This depreciation, in case of sale or lease, would therefore be a proper and fair element in the estimate of damages.

The residue of this branch of the instruction is not very clear as to its precise meaning; but the jury had a right to consider the costs of restoring the premises in any of the modes covered by the proof. The disuse of gas would naturally lead to a change in the arrangements of the house, more or less expensive, and the cost of which, under the circumstances of the case, the jury were at liberty to consider and allow.

There being no error in the instruction given by the Court below, the judgment will be affirmed.

*Judgment affirmed.*

(Decided May 10th 1866.)