MARY E. BERNER, appellant, v. INTERSTATE POWER COMPANY, appellee.

No. 48191.

(Reported in 57. N.W. 2d 55)

February 10, 1953.

David O. Shaff and Robert J. Byers, both of Clinton, for appellant.

Edward C. Halbach and Carroll F. Johnson, both of Clinton, for appellee.

Hays, J.—Law action for damages. The issue on this appeal concerns a ruling by the trial court on points of law, as provided for in rule 105, R. C. P. Based upon such ruling, plaintiff's petition was dismissed and she appeals.

Defendant is a public utility, furnishing electric current to the residents of the city of Clinton, Iowa. Plaintiff, a resident of Clinton, resides at 630 Sixth Avenue South. At and prior to the

time in question she was being furnished electric current at said address by defendant. Also, sometime prior to May 14, 1951, plaintiff owned and operated a restaurant at 62 Main Avenue. This business had been discontinued with an electric bill of $129.56 due to defendant. On May 14, 1951, this bill not being paid, defendant discontinued service at 630 Sixth Avenue South, although there was no arrears as to that address. On June 13, 1951, service was restored at the Sixth Avenue residence. This action is for damages on account of the discontinuance of service.

In Division II of defendant's answer, it is asserted that such discontinuance was authorized under certain rules and regulations of the company. These rules are:

"1. *Rules and Regulations on File.* A copy of all rates, rules, and regulations under which electric service will be supplied are to be kept on file for the public's benefit in the offices of the company. All electric service furnished by the company shall be subject to the following rules and regulations.

"2. *Application for Service.* A written application or contract, upon the form provided by the company, will be required from each prospective customer before the service is connected. A duplicate copy of such application will be furnished the customer upon request. The company may refuse to render service to any applicant indebted to the company for service rendered at another location until the customer has paid, or made satisfactory arrangements to pay such indebtedness and has complied with other requirements for service."

By reply plaintiff asserts said rules and regulations are unreasonable and void. It asked the trial court to pass upon the following legal question: "Are the rules and regulations of a utility company reasonable which provide that service may be denied at a party's residence where a bill is paid in full in order to effect payment of a delinquent business account?" The trial court held in the affirmative and dismissed plaintiff's petition; thus the appeal.

I. At the outset we make the following observation. Both appellant and appellee assume the rules above set forth are applicable to the instant facts. The trial court adopts this assump-

tion, stating the issue to be: "Whether or not a public utility company may discontinue or deny service to a patron refusing to pay a past-due undisputed bill for service regardless of the address to which rendered." This being the theory upon which the matter was presented to and determined by the trial court, we shall adopt this theory as correct. We do not determine it as a fact. While we observe in appellant's reply brief and argument the correctness of this theory is questioned, it was not raised in the trial court and appears to be an afterthought.

██ ██ II. The rule is well established that a public utility has the power, except as otherwise regulated by statute, to prescribe and adopt reasonable rules and regulations. 73 C. J. S., Public Utilities, section 6. Section 397.28, Code of 1950, specifically authorizes the same. It is generally recognized that a public utility may adopt and enforce, as a reasonable regulation for the conduct of its business, a rule that service may be refused at a new address to a customer delinquent as to a former address; that service may be cut off at a given address on account of a delinquency at such address; that before service is initially furnished, the prospective customer may be required to deposit a reasonable amount to safeguard the account or be required to pay, in advance at stated periods, a reasonable estimated amount to cover service to be furnished. Cedar Rapids Gas Light Co. v. Cedar Rapids, 144 Iowa 426, 120 N.W. 966, 138 Am. St. Rep. 299, 48 L. R. A., N. S., 1025; Bailey v. Interstate Power Co., 209 Iowa 631, 228 N.W. 644; Birmingham v. Rice Bros., 238 Iowa 410, 26 N.W.2d 39, 2 A. L. R.2d 1108; 43 Am. Jur., Public Utilities and Services, section 64; annotations 112 A. L. R. 237 and 132 A. L. R. 914.

In authorizing such regulations it is recognized that a public utility has peculiar status in that, unlike the ordinary business operator, it is not free to accept or reject its patrons. It is recognized that, in the main, its accounts with its individual patrons over any stated period, usually on a monthly basis, are small. To require them to continue such service, after delinquencies, and collect the same in the ordinary manner would work an unjust hardship upon them. Balancing the necessity that people of a community be furnished this service against the right of the utility to receive fair compensation for services rendered, such

rules may be adopted and made a part of the contract between the supplier and the consumer. Thus the common thought that a public utility must serve all comers is correct only to the extent that it must serve all comers who agree to and do observe the reasonable rules and regulations thus adopted. Birmingham v. Rice Bros., supra.

The question presented by this appeal is one step advanced of the usual situation and appears to be one of first impression in this court. Decisions on the question in other jurisdictions are relatively few in number and not in full agreement. 43 Am. Jur., Public Utilities and Services, section 71, states that law upon this question is unsettled. See also 95 A. L. R. 556 and 14 Iowa Law Review 99.

Many of the cases relied upon by both appellant and appellee may be distinguished from the instant case upon their facts. They all recognize the peculiar status of the utility company and the necessity of granting to it certain privileges for the collection of its accounts other than the usual way in which debts are collected. They all recognize the relationship between the company and the individual consumer to be a contractual one. Many regard each address to which service is furnished, and which is handled and billed as a single unit, as representing a wholly separate and independent transaction irrespective of the fact that one individual may receive bills for various addresses or units served. We think this to be the reasonable view to take and as stated in Hatch v. Consumers Co., 17 Idaho 204, 217, 104 P. 670, 674, 40 L. R. A., N. S., 263, "This claim, if an obligation against plaintiff, was a wholly separate transaction, and must be collected in the usual way in which debts are collectible. It cannot be wrung from the plaintiff by preying on his present rights and necessities for an essential to life and health." In Miller v. Roswell Gas & Electric Co., 22 N. M. 594, 596, 597, 166 P. 1177, it is said:

"That it has the right to demand payment in advance or a reasonable deposit to secure payment for the contemplated service, is undisputed, but it cannot refuse to furnish service to a building or residence because the proposed consumer owes it a past-due obligation for service at some other and distinct place

or for some other service. For the collection of such accounts the law affords public service companies the same remedies enjoyed by others. Water and light are indispensable, and companies engaged in supplying such commodities undertake to do so to all applying and complying with reasonable rules and regulations. Such companies have no right to withhold such service for the purpose of enforcing the payment of past-due indebtedness, unless such indebtedness is incurred for the current use of the same upon the premises supplied."

See also The Gaslight Co. v. Colliday, 25 Md. 1; Southwestern Gas & E. Co. v. Stanley, 123 Texas 157, 70 S.W.2d 413; Benson v. Paris Mountain Water Co., 88 S. C. 351, 70 S.E. 897; Lloyd v. Washington Gaslight Co., Del., 1 Mackey 331. For authority to the contrary see De Pass v. Broad River Power Co., 173 S. C. 387, 176 S.E. 325, 95 A. L. R. 545; Mackin v. Portland Gas Co., 38 Or. 120, 61 P. 134, 62 P. 20, 49 L. R. A. 596; People ex rel. Kennedy v. Manhattan Gas Light Co., N. Y., 45 Barb. 136.

Attached to appellee's answer is a letter, apparently signed by appellant under date of December 10, 1949, and addressed to appellee, which states that appellant will be responsible for gas and electric bills pertaining to 62 Main Avenue. Under this letter appellee claims a consent was given by appellant that the company might take the steps taken if a delinquency existed at said address. That involves a fact question which was not before the trial court and is not before us on this appeal.

We hold that if rule 2, supra, of the company be to the effect that the appellee may discontinue service at an address which is the homestead at which there is no arrearage for service furnished, because said consumer refuses to pay for past-due service for some other and independent use, or at some other place, such rule is unreasonable as exacting from the appellee's patrons something to which it was not entitled under the law.

For the reasons above-stated the judgment of the trial court is reversed and the cause remanded for trial on the issues in accord with above pronouncement.—Reversed and remanded.

All JUSTICES concur except SMITH, J., who takes no part, and LARSON, J., not sitting.