443 P.2d 663

Tom N. SOTER and Helen P. Soter, his wife, Plaintiffs and Appellants,

v.

WASATCH DEVELOPMENT CORP., a Utah corporation, Paul G. Boyce and Hazel Boyce, his wife, Defendants and Respondents.

No. 11119.

Supreme Court of Utah.

June 12, 1968.

Thos. R. Blonquist, Carvel R. Shaffer, of Burton, Blonquist, Cahoon, Matheson & Shaffer, Salt Lake City, for plaintiffs and appellants.

George H. Searle, Salt Lake City, for defendants and respondents.

CROCKETT, Chief Justice:

Plaintiffs Soter sued the defendants Boyce claiming damage for wrongful interference with plaintiffs' right of contract. On the basis of pleadings, affidavits and documentary evidence submitted the district court granted the motion of the defendants Boyce to dismiss on the ground that the plaintiffs did not show a basis upon which relief could be granted. Plaintiffs appeal.

On September 2, 1963, the plaintiffs Soters purchased by uniform real estate contract the Castel Apartment, 171 East 4500 South in Salt Lake County from the Convest Corporation. The record indicates that there was an outstanding mortgage of approximately $140,000 and that payments were to be made of $1494 per month. Thereafter Convest conveyed its interest to the defendants Boyce, who were thus entitled to receive the payments. In September of 1965, while the Soters were substantially in arrears in their payments, unbeknown to the Boyces, they placed a further mortgage on the property for a debt of $19,549 to one Apostle. On September 22, 1965, the Boyces made demand on plaintiffs for payment of arrearage of $12,410. After some discussions an agreement was entered into setting the remaining arrearage at $10,040 and giving the Soters an extension of six months to pay up the delinquency, conditioned that if they failed, the plaintiffs' attorney, Richard L. Bird, would deliver a quit-claim deed which the Soters executed. During the six-month period the Soters were working out a deal by which the Wasatch Development Corp. would purchase the property from Soters and take

over the contract. Meanwhile, the Soters continued in default on their payments to the Boyces, and after six months had elapsed, the Boyces demanded delivery of the quit-claim deed from Mr. Bird, which was finally delivered by him to the Boyces on May 21, 1966.

The basis of the plaintiffs' claim for damages against the Boyces for interference with their contract is that their quit-claim deed should not have been delivered by Mr. Bird because the Boyces had failed to cooperate with them in obtaining new financing or a new buyer as they had agreed, but had negotiated directly with Wasatch Development Corp. and spoiled the plaintiffs' deal with that company.

 · In order to establish a right to recover on such a cause of action the plaintiffs would have to show that the defendants, without justification, by some wrongful and malicious act, interfered with the plaintiffs' right of contract, and that actual damage resulted.[1]

The question for determination here is whether under the circumstances shown the plaintiffs could fulfill the foregoing requirements. An important consideration bearing on this problem is the fact that Soters and their attorney were fully aware that the Boyces were carrying on negotiations with the Wasatch Development Corp. through its president, Mr. Jim Hansen.

This is shown by letters, Exhibits "H" and "I", sent by plaintiffs' attorney, Mr. Bird, to defendants' attorney, Mr. Searle, which we quote:

Dear Mr. Searle:

After our telephone conversation of March 21 I called Tom Soter and told him that you had said that Mr. Boyce wants money and not a chance to negotiate with Hansen (president of Wasatch) for Hansen's equity in a home. I told him that you were authority for saying that Soter had fifteen (15) days in which to come up with another buyer who could produce the cash.

I asked Soter to call Boyce and confirm that fact with him, and make certain that Boyce was not unwilling to deal with Soter, as Mr. Hansen had told Mr. Soter.

Mr. Soter called me today to say he talked to Mr. Boyce last night and Mr. Boyce said that he is going to work out his deal with Hansen and since Mr. Soter has in effect sold to Mr. Hansen Soter has nothing more to say about it. Mr. Soter called Mr. Hansen who informed him that Hansen and Boyce are to get together again this evening (March. 22) and they expect to come to an agreement.

*This rather confirms the appearance this matter has had for some time,*

---

1. See 30 Am.Jur. 92, Interference, Sec. 55, and authorities therein cited.

namely, that the Boyces are willing to work something out with Hansen and do not insist on full cash for the payments that are now due.

The Soters delivered a quit claim deed to Hansen, conditioned upon Hansen's getting signature to the three way agreement between Boyces, Soters and Wasatch Development Corp. Instead, *Hansen recorded the quit claim deed and has proceeded negotiations on a bilateral basis with Boyces. This is all right with us* provided it has the approval of you and the Boyces, and I am now uncertain whether to let Mr. Soter do what Mr. Boyce says or whether I should do what you had indicated.

*I suggest that you confer with Mr. Boyce and if Boyce does not want to deal with Hansen that you let me know* so that Soter may then take up the matter of satisfying Mr. Boyce and we may hold Wasatch Development Corporation in default for failing to satisfy the Boyces as their contract requires. It is real awkward since appearances are that the Boyces and Hansen are trying to work together and will probably succeed ultimately if we leave them alone. We are fearful of leaving them alone lest their negotiations break down and Soter be held in default.

The next letter, Exhibit "I", is dated three days later on March 25, 1966, and reads in part as follows:

Mr. Soter and Mr. Jim Hansen thought they had completed an oral agreement with Mr. and Mrs. Boyce on Wednesday evening, March 23rd.

*Mr. Soter is in agreement that unless the money is raised and tendered to you on or before April 15, 1966 I am authorized to deliver to you a quit claim deed* from Mr. and Mrs. Soter which I hold in my files. (All emphasis added.)

██ In addition to the fact that these letters written by plaintiffs' attorney show that they were aware of and apparently approving Boyces' negotiations with Wasatch, the Boyces had a legitimate interest in seeing what was being done about their property and in seeing that someone who was willing and able should become responsible for paying out the contract. In the case of Bunnell v. Bills[2] we quoted with approval Professor Prosser, Law of Torts, p. 737, to the effect that if a party has an interest to protect, he is privileged to prevent performance of a contract which threatens it. The Soters had long been in default, and had not remedied the same during a six-month extension granted them, nor in an additional two months: The plaintiffs have made no averment or claim,

2. 13 Utah 2d 83, 368 P.2d 597 (1962); to the same effect see 30 Am.Jur., Interference, Sec. 33, and cases there cited.

except as set forth herein, of any other specific act on the part of Boyces that prevented them from raising the money or bringing their purported contract with Wasatch to fruition.

It is our opinion that the trial court was justified in granting the defendants Boyces' motion to dismiss because the undisputed facts shown preclude any reasonable possibility that the Soters could make out a cause of action for wrongful interference with a contractual relationship between the Soters and Wasatch Development Corp.

Affirmed. Costs to defendants Boyce (respondents).

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.