FIRST SECURITY BANK OF UTAH, N.A., a Delaware corporation, Plaintiff, Appellant and Cross-Respondent,

v.

Dale M. WRIGHT et al., Defendants, Respondents and Cross-Appellant.

No. 13098.

Supreme Court of Utah.

April 9, 1974.

---

7. 74 Wash.2d 394, 444 P.2d 667, 674 (1968).

Milton T. Harmon, Nephi, for First Security Bank of Utah.

Robert L. Moody, of Christensen, Taylor & Moody, Provo, for Dale M. Wright.

Dave McMullin, Payson, for Zions First National Bank.

CROCKETT, Justice:

In its original and main aspect this case is a suit by First Security Bank of Utah against Dale M. Wright on a promissory note executed in connection with the purchase of a sugar beet harvester, and to foreclose on the harvester and certain crops pledged as security. In subsequent proceedings, Zions First National Bank was made a defendant to adjudicate its asserted prior security interest (mortgage) in the crops. Based on proceedings and discovery prior to trial, Zions made a motion for and was granted summary judgment that, except for $1,500 it had agreed to subordinate to First Security, Zions' interest was superior to that of First Security. The latter appeals, urging that its security agreement should have further priority over Zions' for reasons discussed below.

Defendant Dale Wright operates a substantial and diversified farm in Juab County. On April 16, 1970, Zions loaned him $5,000, to be repaid in nine months, by Jan-

uary 16, 1971. He executed a security agreement [1] pledging all his cattle and their increase, any and all equipment owned or coming into his possession and "all grain and sugar beet crops together with any and all other crops grown on said land." Adjunctive to this transaction, a financing statement covering his "livestock and crops," but stating no maturity date, was filed with the Secretary of State on April 22, 1970.[2]

That fall, in October 1970, Wright desired to purchase from the First Security a repossessed beet harvester. First Security was willing to sell it to him for $2,780, and to finance the purchase, but wanted security for their loan. It knew of Zions' prior security interest in Wright's property, and refused to finance the beet harvester transaction unless an agreement could be obtained from Zions that it would subordinate its prior loan to this new loan to First Security. Such an agreement was entered into whereby First Security was to have the first $1,500 proceeds from Wright's 1970 sugar beet crop, grown on a particular 240-acre tract of land. In a subsequent agreement First Security also took as additional security, the beet harvester and the first $1,500 of income from the anticipated "sugar beet crop" of the following year, 1971, from the same land.

Significant facts bearing on the controversy here are that in the fall of 1970 bad weather prevented Wright from harvesting the secured beet crop; and that the following season, 1971, he did not grow "sugar beets" on that ground, but instead raised grain. Upon harvesting the grain from the 240 acres he delivered $4,500 worth to the Mountain View Dairy. Before payment was made, First Security notified Mountain View of its security interest and demanded payment to it. Wright also sold crops to Moroni Feed Company for

$1,356.23, against which First Security similarly served notice and demand for payment.

On August 12, 1971, First Security filed this action on the note and sought foreclosure on the pledged securities, including Wright's 1971 crops and the proceeds thereof; and Zions, Mountain View Dairy, Moroni Feed and others were made parties. The latter companies paid into court what they owed Wright, and all but Wright and Zions were dropped as defendants.

■■ In arguing that its security agreement from Wright takes priority over Zions, First Security urges that the Zions' financing statement does not contain an adequate description of the property on which the crops are grown as required by Section 70A–9–402, U.C.A.1953.[3] If we assume that the general designation of Wright's property and crops in the security agreement to Zions did not meet the requirement of the statute, that does not seem to be of controlling importance here. The purpose of the recording requirement is to give notice to parties whose interests may be affected. The trial court expressly found that First Security had actual knowledge of Zions' prior claim of security interest in Wright's property and crops, when they obtained the subordination agreement by which Zions allowed First Security the first $1,500 from the 1970 beet crop. In Zions' motion for summary judgment, it conceded to First Security that entitlement; and the trial court rendered judgment accordingly.

In rejecting the contention of First Security that its security agreement takes priority over Zions in Wright's 1971 grain crops, (and the impounded proceeds therefrom) the trial court could very well have reasoned thus: that because First Security had actual knowledge of Zions' prior loan and security agreement, it either knew or

---

1. Sec. 70A–9–203(1)(b), U.C.A.1953, provides for the enforceability of security agreements.

2. Sec. 70A–9–402 and 70A–9–401, respectively, set content and filing requirements for the financing statement.

3. A subsequent section, 70A–9–110, declares a description sufficient if it reasonably identifies what is described.

should have known the amount of the loan and the terms of payment;[4] that if it had desired any other protection than the first $1,500 on the 1970 crop, to which Zions agreed, it should have so protected itself in that agreement; that as a consequence thereof its claim and security agreement against Wright's 1971 crops should be deemed subordinate to the prior one of Zions. Coupled with this is the further proposition that the only claim First Security could assert in Wright's 1971 crops was on his "sugar beets," when there was in fact no such "sugar beet" crop for that year. From what has been said above, it appears that there was adequate justification for the trial court's rejection of First Security's assertion of a priority in preferred claim on Wright's crops for that year.

The foregoing would ordinarily seem to be sufficient disposition of First Security's contention, because it ought to have a valid claim of its own, and thus meet the usual requirement that it must prevail on its own merit, and not on the weakness of its adversary. However, inasmuch as First Security and Zions are creditors competing for Wright's assets (the impounded funds) it may well be that if Zions had no valid security interest in Wright's 1971 crops, First Security could have some assertable claim therein, and thus has a protectable interest. For this reason we give further attention to First Security's attack on the validity of Zions' claim of security interest in Wright's 1971 crop.

Each bank relies upon its own selected section of the Uniform Commercial Code to support its position: Zions points to Section 70A–9–403, U.C.A.1953, which provides that "unless otherwise indicated, a financing statement is effective for a period of five years from the date of filing . . . ." Whereas First Security invokes Section 70A–9–204, Subsection (4), which provides that:

No security interest attaches under an after-acquired property [i. e. crops] clause

(a) to crops which become such more than one year after the security agreement is executed . . .

In regard to that dispute: it is undoubtedly true that the latter section, which deals specifically with crops, should be given preference over the former section, which is general in nature.[5] However, in order to gain any advantage on that restrictive statute, First Security had the responsibility of making affirmative proof that the crops in question did not come into being (that is, were not planted) until more than one year after the Zions Security agreement was executed.[6] No such proof was made or proffered. First Security refers only to the fact that the crops were harvested in August, 1971. This does not prove that the grain was not planted before April 16 that spring, or even the previous fall, and thus within a year after Zions' security agreement was executed. Accordingly, the conclusion to be drawn from consideration of the effect of the statutes above referred to, is not inconsistent with the trial court's ruling.

First Security also complains of the refusal of the trial court to include foreclosure on the beet harvester as a part of its judgment. The designation of record contains no reference to the exhibits; and they are not before this court. In the absence of record, we assume that it supports the judgment.[7]

The final error complained of by First Security is the refusal of the trial court to allow as part of its costs the tak-

---

4. As to being charged with knowledge of what notice and reasonable inquiry would reveal, cf. Roberts v. Hummel, 69 Nev. 154, 243 P.2d 248.

5. See, Sutherland on Statutory Construction (4th Ed. 1973) Sec. 51:05, and authorities cited therein.

6. Sec. 70A–9–204(2), U.C.A.1953, states that, "For the purposes of this section the debtor has no rights (a) in crops until they are planted . . . " From this section, it can be seen that crops "become such" when they are planted.

7. Watkins v. Simonds, 14 Utah 2d 406, 385 P.2d 154.

ing of Wright's deposition. The allowance of such costs is governed by these propositions: The burden is upon the claiming party to establish that they are necessary and reasonable; the determination of whether that burden is met is within the sound discretion of the trial court; and unless it is shown that the refusal to allow them is arbitrary, or a clear abuse of discretion, his ruling will not be disturbed.[8] We see no reason to change his determination.

Defendant Wright, as an adjunct to its defense against the claim of plaintiff First Security, filed a counterclaim for damages against the latter, alleging wrongful interference with Wright's business. This was premised primarily on the fact that First Security notified the Mountain View Dairy and Moroni Feed of Wright's delinquency on the note and demanded payment to First Security. After presentation of the evidence to a jury, the court granted plaintiff's motion for directed verdict of no cause of action against the defendant on his counterclaim. Several observations are pertinent to that ruling.

The first is that a creditor who has a security interest in personal property has a right to notify any third party of his interest; and doing so does not constitute an actionable interference with the debtor's business.[9] However, Wright makes the further contention that the notice and demand on his debtors contained false statements and was for that reason wrongful invasion of his rights. This is another area in which we set aside any concern as to the dispute, and give attention to a more fundamental and controlling proposition upon which the trial court based its ruling:

that the defendant did not make nor proffer any sufficient proof to justify a finding that he suffered compensable damage to his business as a result of First Security giving notice to the named debtors.[10] Consequently, the court did not err in directing a verdict against him on the counterclaim.

Applicable to the various points discussed herein is the traditional rule of review: that the presumptions favor the correctness and credibility of the findings and judgment; and that the burden of showing they are in error and should be overturned is upon the attacker.[11] Considered in that light, we are not persuaded that the determinations made by the trial court should be disturbed.

Affirmed. The parties to bear their own costs.

CALLISTER, C. J., and ELLETT and TUCKETT, JJ.

HENRIOD, Justice (concurring and dissenting).

I concur except for the main opinion's gratuitous rule anent the expense of taking depositions being assessable costs sometimes and no costs at all at other times,—to which part I dissent. So doing I refer to my dissent in the case cited in the opinion —Lawson v. General Plumbing, particularly Footnote 2,—for the reasons supporting my position. Costs are a statutory matter, and depositions are not included in our statutes, which are specific. If they are an item of costs there seems to be no reason for not including a lawyer's airplane ticket to Honolulu and back incident to the taking of a deposition.

8. See Lawson Supply Co. v. General Plumbing & Heating, 27 Utah 2d 84, 493 P.2d 607.

9. See 9 A.L.R.2d 267.

10. For discussion as to necessity of such proof with reasonable certainty see, Howarth v. Ostergaard, 30 Utah 2d 183, 515 P.2d 442;

Soter v. Wasatch Development Corp., 21 Utah 2d 224, 443 P.2d 663; 22 Am.Jur.2d 226.

11. Hardy v. Hendrickson, 27 Utah 2d 251, 495 P.2d 28; Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176.