John C. JOSEPHSON and Geraldine C. Josephson, his wife, Plaintiffs and Appellants,

v.

MOUNTAIN BELL, a public utility, and John Does, 1 through 5, Defendants and Respondents.

No. 14946.

Supreme Court of Utah.

Feb. 24, 1978.

---

Robert C. Cummings, Gordon A. Madsen, Salt Lake City, for plaintiffs and appellants.

Parsons, Behle & Latimer, Gordon L. Roberts and Stephen K. Schroeder, Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Plaintiffs, John and Geraldine Josephson, sued Mountain Bell for compensatory and punitive damages, claiming that the telephone at their residence was wrongfully disconnected because of an unpaid phone bill for Mr. Josephson's business. Upon a trial to a jury the court submitted the case under instructions that the plaintiff had the burden of proof on these two basic issues:

(1) Did the defendant wrongfully terminate the telephone service to the home of the plaintiffs? and (2) if so, what injuries, if any, did plaintiffs suffer thereby and what damages, if any, are plaintiffs entitled to recover?

The instructions also included:

If you find that plaintiffs have failed to prove either one of these factual issues . . . you should return a verdict in favor of the defendant of no cause of action.

The jury returned a general verdict of no cause of action.

On appeal the plaintiffs contend that the evidence compels findings in their favor on the above-stated issues. Whereas, defendant argues that the verdict was justified because the jury could have refused to believe either (a) that the telephone was wrongfully disconnected, and/or (b) that the plaintiffs suffered any damage.

Plaintiff John Josephson was the owner of a travel service which he operated under a dba, Josephson's Travel Service, and was also involved with Western Office Supply and Travel Institute School, a private, non-profit corporation of which he was an officer. The offices for all business were maintained at 375 West 200 South in Salt Lake City where each business had its own telephone. There was a history of delinquencies in paying for these business phones, the details of which are not material here except that the Josephson Travel Service phone had been finally disconnected in June, 1975, leaving an unpaid balance of $418. On September 2, 1975, Mr. Josephson had moved his other two businesses to 714 Ninth Avenue, two doors away from his residence, where phone service was availa-

ble to him and his family. Although the charges on the plaintiff's residence phone were paid, in late August 1975, defendants advised Josephson that if the delinquency on the business phone was not paid, the residence phone would be disconnected. Carrying out that threat, the defendant company disconnected the home phone on September 3, 1975, which precipitated this lawsuit.

■ The question is thus squarely presented: where the customer had paid all current charges on his home phone, was the defendant within its rights to disconnect that phone because charges were not paid on the separate business phone.

Defendant phone company bases its defense in part upon tariffs filed with the Public Service Commission paragraph L–4 of which recites in substance: if a subscriber does not pay charges on one telephone account, the company may bill it to any other account of the subscriber.

Paragraph Q–2 states:

The Company may, after notification of intent to the subscriber, temporarily suspend or terminate the service for non-payment of any sum due the Company.

■ With respect to those tariffs, these observations are pertinent. They are filed by the utilities themselves and thus mainly serve their own interests. They should be construed strictly against the utility; and the utility should be required to strictly comply with them; and they must be fair, reasonable and lawful.[1] Second, in this instance it is not shown, and the defendant does not claim, that it ever so billed the business phone charges against the plaintiff's residence phone. It did, however, give the plaintiff notice of intent to disconnect the home phone a few days prior to doing so.

■ The position of the telephone company may well be quite tenable in the oper-

ation of any ordinary business. But that the company, as a public utility, has a higher obligation to render service to the public than does the ordinary business. This derives from the fact that it is given the privilege of having a monopoly in rendering a necessary public service. The reasons for this need no discussion here except to say that as one of the conditions to being allowed that privilege is that it must render service to all members of the public who so request and pay for it.[2]

It is to be observed that a household may well include members who are not in any way involved in or responsible for the business carried on by one of the family members in whose name the home phone is listed. This applies particularly to the plaintiff Geraldine Josephson and also to any other members of the family who may reside in the family home. They are all members of the public to whom the defendant is obliged to make its service available so long as it is paid for. The defendant is not without other remedies to collect its charges against the separate business entities conducted by plaintiff John Josephson. But it is our opinion that the defendant should not be permitted to use the pressure of imposing a penalty upon the home and the family by denying them a public service they are entitled to and paying for. This analogy seems helpful: Suppose a man owes a common carrier, such as a bus company, a debt for freight it has hauled for him or his business. He wants to travel as a passenger and offers cash for his fare. The company refuses to sell him a ticket or carry him because he owes them a prior debt. In this refusal the carrier would violate its responsibility to the public to carry all who present themselves and pay the required fare. A fortiori, a wife and/or other members of the family should be entitled to such transportation.

In accordance with what has been said above, we cannot see it as other than a

1. *Berner v. Interstate Power Co.,* 244 Iowa 298, 57 N.W.2d 55 (1953); *AAA etc., Inc. v. Southwestern Bell Telephone Co.,* Okl., 373 P.2d 31 (1962); 73 C.J.S. Public Utilities § 6; 86 C.J.S. Tel. & Tel., Radio and Television § 70.

2. U.C.A.1953, Sec. 54–3–1; *Berner v. Interstate Power Co.,* supra; 73 C.J.S. Public Utilities § 7.

deprivation of the plaintiffs of their rights to cut off their home phone service because charges on the separate business phone were delinquent.[3] We therefore agree with plaintiffs' contention that the disconnection of their home phone was wrongful.

■ The second proposition argued by the defendant: that in any event, the jury was justified in finding that the plaintiffs suffered no damage is paradoxical indeed. This would involve the postulate that a person is just as well off without defendant's service as with it. If this be true, and there is no advantage to the customer in having its service, the question must be asked, what is the defendant charging its customers for, and what are they paying for? The defendant company does a sufficiently good job in advertising the numerous advantages and the desirability of its service to the public that it should need no assist here. The same is true of the potential critical needs in certain exigencies, and of the aspects of the service which have similar effects upon those who may want to communicate with plaintiff family.

It seems sufficiently obvious as to hardly justify comment that what people are willing to pay for has some value to them, and that, by the same measure, being without such service, results in some damage. It is only a little short of amazing that the defendant would here take the position that the plaintiffs' home telephone was practically valueless to them, particularly because they had only the slight inconvenience of going two doors away to use the telephone. The fact that defendant's counsel seems to have so persuaded the jury is certainly a tribute to his skill and adroitness in advocacy. But we are impelled to the conclusion that this does not square up with the test of justice as we see it.

We do not ignore our commitment to deference to the prerogatives of the trial court and the jury. But in the appellate function of this Court, there is a responsibility to review and to correct what we perceive to be such an arrant departure from reason and justice. Consequently, it is necessary that the judgment be reversed and that this case be remanded for the purpose of determining such amount of damages as plaintiffs may have suffered because of the wrongful disconnection of their telephone. Costs to plaintiffs (appellants).

ELLETT, C. J., and MAUGHAN, J., concur.

HALL, Justice: (dissenting).

I respectfully dissent.

The jury returned a verdict of no cause of action and judgment was entered for defendant Mountain Bell. Plaintiffs then filed a Motion for Judgment notwithstanding the verdict or in the alternative a Motion for a Directed Verdict. (Plaintiffs acknowledge that this alternative motion was actually a motion for a new trial). These motions were denied by the trial court and this appeal followed.

It is important to understand the basis of the jury's verdict. Even assuming defendant wrongfully disconnected plaintiffs' home phone, the jury decided plaintiffs had suffered no compensable damage. Certainly not having access to a telephone in one's home may be inconvenient, but the jury decided that based upon the evidence presented at trial, plaintiffs could not recover. The evidence showed that plaintiffs did have yet another phone just two doors away from his residence, which was clearly applied for after notice and in anticipation of the disconnect, and installed just one day before the home phone actually was disconnected. The burden of showing wherein he has been harmed must necessarily fall upon the plaintiff, and by failing to carry that burden plaintiff loses his cause of action.[1] Under basic principles of judicial review, we should not upset the jury's verdict un-

---

3. See 95 A.L.R. 556, annotation and authorities therein cited supporting that proposition which we believe is the sounder view, but citing also some cases contra.

1. See *First Security Bank of Utah, N. A. v. Wright,* Utah, 521 P.2d 563 (1974); *Soter v. Wasatch Development Corp.,* 21 Utah 2d 224, 443 P.2d 663 (1968).

less it is unreasonable or in direct conflict with the evidence.[2] I do not believe such a showing has been made on this appeal.

Notwithstanding the foregoing, I do feel compelled to address some of the points raised in the majority opinion as to whether or not a public utility has the right to deny service at one address because of failure to pay for past service rendered at another address. The majority decision correctly notes that there is a split of authority on the issue. However, the better rule seems to allow the public utility such a right unless its actions are arbitrary, unjust, inequitable, or without legal right under the particular circumstances.[3] The trend seems to be that there exists such a right of cut-off when it is founded either in (1) a provision of the current service contract between the parties; (2) a statute generally governing the conduct of public utilities; or (3) a rule of regulation promulgated by the company itself, usually as part of its filed tariff.[4] In this case, the defendant has properly filed tariffs which cover the situation, as follows:

L–4 In the event a subscriber is indebted to the Telephone Company for charges and services rendered at a prior time, of any nature, or for service at more than one number or location, and the subscriber does not pay the charges or satisfy such indebtedness, the Telephone Company may charge and bill such indebtedness against the account of the subscriber's present service or to the account of the subscriber's present service where more than one number or location is being served.

Q–2 The *Company may, after notification* of intent to the subscriber, temporarily suspend or *terminate the service for nonpayment of any sum due* the Company. [Emphasis added].

These are alternative remedies available to the Telephone Company. In the instant case, defendant realized that to try to collect the business debt by billing the home account would be a useless effort and therefore opted to give notice (which was done on numerous occasions) and then to disconnect the service. I believe this is permitted on the facts before the court. It should also be noted that the fact that one account was for business use and the other was for personal use is of no consequence.[5] The evidence clearly shows that although called his "business" account, the business was a dba and the phone was for plaintiffs' personal use.

Finally, a public policy argument supports the judgment for defendant. There is a legal maxim which says in effect that no one can benefit from his own wrongdoing. To permit plaintiffs to recover damages for failing to pay their debts is a strange distortion of justice. The majority opinion suggests that the telephone company could also have collected the business phone arrearages through ordinary judicial means. This is true; however, normal collection processes cost money, which cost in turn must be passed on to those customers who properly pay their debts. There must be a balancing effect to insure that innocent, upstanding customers are not harmed by the selfish acts of another.

This is not to suggest that in every instance a utility company would be justified in discontinuing service to a delinquent customer, but under the facts of this case I would affirm the jury's verdict and the trial court's judgment.

WILKINS, J., concurs in the views expressed in the dissenting opinion of HALL, J.

**2.** *Arnold Machinery Company v. Intrusion Prepakt Inc.,* 11 Utah 2d 246, 357 P.2d 496 (1960); *Brunson v. Strong,* 17 Utah 2d 364, 412 P.2d 451 (1966). ·

**3.** *Water Supply Board v. Williams,* 53 Ala.App. 560, 302 So.2d 534 (1974). See, U.C.A., 1953, 54–3–1.

**4.** Annot.: Utility Cut-off—Default at another address, 73 A.L.R.3d 1292 (1976).

**5.** *Dworman v. Consolidated Edison Co.,* 26 A.D.2d 535, 271 N.Y.S.2d 363 (1966).