Public Utilities Commission,
No. 6139.

WALTER J. KOMISAREK, JR.

*v.*

NEW ENGLAND TELEPHONE & TELEGRAPH CO.

October 5, 1971.

*Cleveland, Waters & Bass ( Mr. Warren E. Waters* orally ) for the plaintiff.

*McLane, Carleton, Graf, Greene & Brown ( Mr. Kenneth F. Graf* orally ) for the defendant.

DUNCAN, J. This is an appeal under RSA ch. 541 from an order and decision of the Public Utilities Commission entered upon a complaint filed by the plaintiff alleging that the defendant wrongfully proposed to terminate all telephone service furnished to him at Pembroke, from the Suncook exchange, by reason of non-payment of charges arising out of a discontinued line out of the Manchester exchange which had previously furnished him service at Allenstown; and seeking an order directing that the defendant leave the Suncook service connected and uninterfered with.

After hearing, the commission found "that the final bill in question is properly due", that the meaning of the provisions of the defendant's tariff concerning disconnection of service was "plain and clear", and that it was "justified, on the facts . . ., in initiating disconnect action". The order of the commission

provided that upon failure of the plaintiff to pay the arrears claimed by the defendant company, the company "may disconnect all telephone service under the account of State Wide Mobile Homes Sales owned by Walter J. Komisarek, Jr. "

For reasons hereinafter indicated we hold that the order of the commission must be vacated because of errors of law. RSA 541:13.

Prior to December 30, 1969, the plaintiff had a place of business in Allenstown to which telephone service was furnished by means of three lines from the Suncook exchange, and one from the Manchester exchange. On December 30, 1969 at the request of the plaintiff the Manchester line was discontinued. In the following month the defendant rendered its bill for $99.66 for service on this line, which included $78.46 carried forward from the preceding month.

On February 20, 1970 the plaintiff transferred his office to Pembroke. A new line from the Suncook exchange was installed, and one of the Suncook lines previously used at Allenstown was transferred to Pembroke. The two other lines on the Suncook exchange which had served the plaintiff at Allenstown were discontinued.

Because of what the plaintiff regarded as unsatisfactory service on the Manchester line, he declined to pay the bill rendered for that service. By notice dated March 4, 1970 the defendant company notified him that unless the bill for the "former Manchester service" was paid by March 12, 1970, service on his two lines to the Suncook exchange would be terminated. The plaintiff thereupon filed this complaint. At the time of the hearing, his accounts with the defendant were current, except for the unpaid bill for the Manchester line.

The defendant presented evidence concerning the service furnished over the Manchester line, from which it appeared that service had been out of order on two occasions in 1969. According to the plaintiff he had been required on various occasions to incur toll charges through use of his Suncook lines which could have been avoided had the Manchester line been operative. However, he took the position that the amount of his liability to the defendant was not in issue before the commission, and he thus was not prepared to substantiate his testimony with dates and supporting data.

On this issue the finding of the commission that the final bill was "properly due" was immaterial, since a determination of the plaintiff's liability was not sought in the proceedings, and juris-

diction to decide the issue was questionable. The complaint sought no order for reparation by reason of excessive charges ( RSA 365:1, 29 ) but only an order precluding termination of service on the Suncook lines, by reason of arrears owing for service on the discontinued Manchester line.

In determining the issue of right to terminate service, the commission ruled that the tariff of the defendant company was " plain and clear " in meaning and authorized the action proposed to be taken by the defendant. It is not to be disputed that the right to terminate or discontinue service for the non-payment of undisputed bills is a commonly recognized procedure the justification for which was stated in *Southwestern Telephone & Telegraph Co.* v. *Danaher,* 238 U.S. 482, 59 L. Ed. 1419, 35 S. Ct. 886 ( 1915 ): " It also was strongly supported in reason, for not only are telephone rates fixed and regulated in the expectation that they will be paid, but the company's ability properly to serve the public largely depends upon their prompt payment. They usually are only a few dollars per month, and the expense, incident to collecting them by legal process would be almost prohibitive. " *See* 1 Priest, Principles of Public Utility Regulation 254-55 ( 1969 ).

The rules and regulations of the commission permit utilities to impose this penalty " in accordance with tariff provisions "; and the applicable provision of the defendant's tariff was as follows: " Bills are due when rendered and are payable at an office of the Telephone Company. Delayed payment of bills may result in the interruption or discontinuance of the customer's service. "

The parties differ in their interpretation of the phrase " discontinuance of the customer's service ", the plaintiff taking the position that this means the service for which payment is in arrears, and the defendant asserting that in the case of an account for commercial service, it means all service of a commercial nature being rendered to the customer.

We take the view that the " customer's service " in the context in which the expression is used in the defendant's tariff cannot reasonably be considered to be " plain and clear ". A customer's service may be both residential and commercial, in which case, as the commission's decision in this case points out, the commission " has historically taken the position that service to a residence cannot be disconnected for failure to pay a business account or *vice versa.* " *See Berner* v. *Interstate Power Co.,* 244 Ia. 298,

57 N.W.2d 55 ( 1953 ). Again, as other provisions of the tariff indicate, a customer may have exchange service, or private line service; or local exchange service or toll service; or as in the case of this customer, Suncook exchange service, or Manchester exchange service. Hence we conclude that if the defendant by its tariff intended to assert the right to terminate any service other than that for which the "delayed payment" was due, it was incumbent upon it to make this plain to its consumers by its tariff. *Northern Ohio Telephone Co.* v. *Public Utilities Commission,* 9 Ohio St. 2d 153, 224 N.E.2d 528 ( 1967 ); *cf. Morse* v. *Pacific Gas & Electric Co.,* 152 Cal. App.2d 854, 859, 314 P.2d 192, 195 ( 1957 ); *see* 43 Am. Jur. Public Utilities and Service *s.* 71, at 618 ( 1942 ).

Accordingly, we hold that the defendant's tariff could not reasonably be construed to authorize the "disconnect action" proposed by the defendant in this case, which would consist of termination of service other than that for which the delayed payment is claimed to be due. The order of the commission holding otherwise was erroneous and unreasonable ( RSA 541:13 ), and is therefore vacated.

*Appeal sustained; remanded.*

Kenison, C. J., did not participate in the consideration or the decision of this case; Griffith, J., did not sit; the others concurred.