## LEO SCHEIBLE v. MARGARETTA KLEIN.

*Contract—Prevention of performance—Damages—Abandonment.*

1. In an action to recover a sum claimed to be due the plaintiff under a verbal building contract, he testified that the contract price, except a small sum reserved until the completion of the building, was to be paid as the work progressed, to enable him to pay for labor and materials, and claimed to have been forced to abandon the contract, before completion, by the defendant, which defendant denied. It appeared on the trial that before such abandonment plaintiff demanded $1,000 of the defendant under the contract, which was refused, and that at the time $1,400 and upwards was due, and that the $1,000 demanded did not exceed the sum due for labor and materials. And it is held that the court was justified in submitting to the jury the question whether the plaintiff was justified in quitting the job by reason of defendant's refusal to pay the $1,000 to enable him to complete his contract, even though they found that he was not driven from the work by the defendant, as claimed by him.

2. Where a contractor abandons the work before its completion, he cannot recover in an action upon the contract, unless he was prevented from completing it by the wrongful action of the defendant.

3. In an action for being prevented from performing a contract for the construction of a building, the measure of damages, if the plaintiff is entitled to recover, is the difference between the contract price and the cost of completing the work according to the specifications.

4. In such a case it is not error to charge the jury that if they find that the plaintiff abandoned the contract in the fall without justification, and that an offer to complete the contract, made the following spring, was not so made within a reasonable time, plaintiff is not entitled to recover.

Error to Wayne. (Hosmer, J.) Submitted on briefs October 27, 1891. Decided December 22, 1891.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Charles Flowers,* for appellant.

*Atkinson, Carpenter, Brooke & Haigh (William Look,* of counsel), for plaintiff.

LONG, J. Plaintiff brought suit in the Wayne circuit court, to recover a sum claimed to be due him under a verbal contract for the construction of a house and barn under one roof. There is no dispute as to the contract price for the completion of the buildings. It was to be $2,275. Plaintiff claimed the arrangement was to be that he was to get the money from the defendant at any time whenever he wanted it, except the last $75, for which he was to wait until the following spring. The contract was made October 6, 1887, and the buildings were to be constructed according to the plans and specifications which were drawn up by Mr. Shefferly, of Detroit. The defendant's claim upon the trial was that the plaintiff should receive at the completion of the job the sum of $2,200; the balance—$75—was to be paid in the spring following.

The plaintiff entered upon the work very soon after October 6, with a number of carpenters and other workmen. He sublet the contract for building the cellar and the foundation walls to a Mr. Dorsch. Mr. Scheible continued work upon the buildings with his men until about

November 4, when he quit, leaving them uncompleted. He claims up to this time to have put about $1,400 worth of material and labor into the buildings. From the time he commenced work until the Saturday before he quit work he had demanded no pay; but on that day he asked defendant to pay him $1,000, so that he might pay for material used, and pay his men. The defendant refused to give him this amount, claiming that she was not to pay until the buildings were completed; but on that day offered him $200, which plaintiff refused to accept. At the time the plaintiff and his men quit work upon the buildings, the cellar and foundation walls had been laid, the buildings erected and inclosed, the roof put on, some partitions set, and some part of the floorings laid. The plaintiff was not at the buildings every day during the progress of the work, and had a foreman by the name of Heideman in charge.

On the trial the plaintiff contended that he quit the job because he and his men were driven away from it by Charles Klein, the son of the defendant. The defendant, upon the other hand, contended that the plaintiff and his men were not driven away from the job, but that he quit for the reason that she refused to give him the $1,000 demanded. The defendant also claimed, and a great amount of testimony was given which tended to show the fact, that the buildings, so far as they had been constructed by the plaintiff, were not constructed in accordance with the plans and specifications drawn by Mr. Shefferly, and that much of the material used was defective; that the only controversy had between her son, Charles Klein, and the plaintiff and his men was that regarding plaintiff's men putting down the flooring in the kitchen, which was to be of maple, with maple boards which were worm-eaten and unfit for flooring, and not in accordance with the speci-

fications; that Charles Klein told the workmen they must stop putting down such flooring as that, but did not order them to leave the job. The plaintiff testified that he quit work when they drove his workmen away; that all he knew of their driving his workmen away was that which was told him by Heideman, his foreman, and the other men. Mr. Heideman testified that on the day before election Charles Klein came to the house in the morning, and told them to quit work; that he told Klein he would have to see Scheible first; that he sent to Scheible, and got word from him the next day to quit work. Another workman testified that Charles Klein came there in the morning of that day, and he heard him tell the foreman: "I don't want you fellows to work here any more; pick up your tools, and get out of here;" that he got down from the scaffold, and Klein passed around the veranda, and said: "If you fellows don't get out of here pretty soon you will see some dead people around here yet." Another workman, by the name of Hoffman, testified that Klein came there that day and told the workmen to quit. This same fact also was testified to by a workman by the name of Cordes. This was denied by Charles Klein. It appeared upon the trial that Charles Klein was acting as the agent of the defendant in looking after the construction of these buildings.

The defendant claimed that the buildings were to be finished in six or eight weeks from the time the contract was let, and that, by reason of their incomplete and unfinished state, she lost a quantity of vegetables and celery which she intended to store in the cellar. It was admitted upon the trial by the plaintiff that the buildings were not in all particulars constructed in accordance with the plans and specifications; that the cellar-wall was not built of the requisite height, and had no foot-

ings under it; and that some defects existed in the material used. Evidence was given upon the trial by the plaintiff showing what it would cost to make the buildings correspond to the plans and specifications.

Some three weeks after the plaintiff quit work on the building he sent Mr. Shefferly, who drew the plans and specifications, to defendant, to see if she would permit the plaintiff to finish the buildings, and he testified that defendant told him she did not want the plaintiff to finish them at all. Mr. Shefferly went over again some eight or ten days after that, and offered to take the responsibility of finishing the buildings in a satisfactory manner if defendant wanted it done. This offer he made to Charles Klein, who stated that his mother was not at home, but he knew she would have nothing done that fall, as it was too late in the season. On April 17 the plaintiff received from the defendant the following letter:

"*Leo Scheible:* You will please take notice that I shall not permit you to do any further work upon the house you commenced to build for me last fall under our agreement, for the reason. that the work which was done by you was not done according to the plans and specifications, and was so poorly done, and the materials are of such poor quality, that the house is worthless for the purposes for which it was intended to be used. Your neglect to build the house in the time which you agreed to finish it has been of great damage to me, and I shall hold you responsible for said damages. I refuse to accept said house, or to pay for the same, or permit you to do any further work upon it. You can have the privilege of removing the material which you have put into the house, and I hereby give you a license to enter upon the premises and remove the same at any time within 30 days from this date.

"MARGARETTA KLEIN."

In reply to this the plaintiff caused a letter to be written Mrs. Klein, as follows:

"DETROIT, April 24, 1888.

"*Margaretta Klein:* Your conduct in relation to the

building of your house has been very unjust to me throughout. I have done my best from the beginning to avoid trouble. I am still anxious to avoid a lawsuit, and with that end in view I. submit for your consideration three propositions:

"1. I will at once complete the building according to our agreement, and make such changes in the work already done as said agreement requires, and you shall pay me therefor $2,275; or—

"2. You can complete the job yourself, and pay me for the labor and material already performed and furnished, $1,675; or—

"3. I will submit the entire matter to the decision of three arbitrators, chosen in the usual manner.

"The fact that said contract has not been performed is, as you well know, due to your refusal to permit me to do what I wished to do. Now, if you reject these propositions, you leave me no other course than a resort to law to recover the value of the work and material already furnished, and damages for your refusal to permit me to perform the contract.

"LEO SCHEIBLE."

The plaintiff has never received any money upon this contract. On the trial the plaintiff had verdict and judgment for the sum of $1,416. Defendant brings error.

Several errors are assigned by the defendant upon the rulings of the court in the admission and rejection of evidence. We find no error in these, and shall not discuss the questions raised under these assignments.

The other assignments of error relate to the refusal of the court to give defendant's requests to charge, to the giving of certain of the plaintiff's requests to charge, and to the general charge of the court. The defendant, by her counsel, asked the court to charge the jury:

"1. If the plaintiff made a contract with the defendant to construct the house in question according to the plans and specifications, and to complete the same in six weeks, and to be paid the sum of $2,275 when the same was completed, and abandoned the work before the completion thereof, he cannot recover in this action, unless

he was prevented from finishing the work by the wrong-
ful acts of the defendant."

We think this request was substantially given by the
court in his general charge, though in some particulars
the request was modified; but the modifications were
proper, in view of the claim made by the plaintiff. This
part of the charge is as follows:

"He went along with the job until the day of election,
and on that day he stopped, and the question for your
determination, and really the first question for your
determination in the matter, is whether he was justified
in quiting at that time. On the one hand the plaintiff
claimed that he was ordered to leave the job; that he was
compelled to leave the job; that, practically, Mr. Klein
refused to permit him to go on with the progress of the
work beyond that Tuesday,—election day; but, on the
contrary, Mr. Klein claims that there was nothing of
that kind occurred; that he did not refuse to permit him
to work; that he did not refuse to allow him to complete
the job, but all that was said and all that was done at
that time was that he said to him when he was laying
down this soft maple floor that he must not put down
any more flooring of that description. Now, I charge
you in that connection, as requested by the plaintiff,
that if you find the defendant, through her agent, ordered
the plaintiff's men to quit work, and that subsequently
they did quit in consequence of the plaintiff recognizing
the validity of the order to stop, and that subsequently
the defendant said that no more work should be done
on that building till spring, and that the plaintiff sub-
sequently offered to remedy any defect, either of material
or workmanship, but that defendant refused to permit
the plaintiff to do any further work on the building,
then, and in that event, and under those circumstances,
your verdict should be for the plaintiff. But I charge
you, as requested by the defendant, that if, on the con-
trary, the plaintiff made a contract with the defendant
to construct the house in question according to the plans
and specifications, and to complete the same in six weeks
(although I do not think in this case that time would be
of the essence of the contract, and that, if it ran over
six weeks, I do not think that in itself would prevent a
recovery), and to be paid the sum of $2,275 when com-

pleted, but he abandoned the work before the completion thereof, he cannot recover in this action, unless he was prevented from finishing the work by the wrongful acts of the defendant. It is for you to say whether at that time he virtually abandoned the work, as it is claimed by the defendant, or whether he was virtually driven from the work by the defendant, or the defendant's son, acting under her instructions."

Defendant's counsel also requested the court to charge his second and third requests, as follows:

"2. If, as claimed by the plaintiff, when the contract was made the defendant told him he could have money at any time when he wanted it, but no time of payment and no specific amount of money was fixed or agreed upon between the parties, it was simply a contract under which the defendant was obliged to pay money only after the completion of the work, and plaintiff was not warranted in leaving the work unfinished because the defendant refused to pay the sum of $1,000, as demanded by the plaintiff.

"3. Even though the plaintiff under the contract had a right to demand money at any time during the progress of the work, according to the plaintiff's own testimony the amount of money which the defendant should pay would be optional with her, and plaintiff could claim no breach on her part if she refused to pay the sum of $1,000, as demanded by him, and he had no right, under such refusal, to quit work upon the house before its completion."

The court refused to give these requests, but charged the jury as requested by plaintiff, as follows:

"I charge you in this connection, as requested by the plaintiff in the case, that if you find it was agreed as a part of this contract for the erection of the building that the defendant should pay the plaintiff as the work progressed, and the plaintiff demanded $1,000 on or about the 1st of November, 1887, as a payment on the building from the defendant, and at that time there was as much coming to the plaintiff on the contract,—that is to say, if the building was so far advanced, as compared with the building as an entirety, as the sum compared with the total price,—and the defendant refused to pay

more than $200, you are to say whether this was a breach of the contract such as justified the plaintiff in stopping the work."

It is claimed on the part of defendant that this is error, for the reason that the court left it to the jury to say whether the refusal of the defendant to pay the $1,000 was a breach of the contract which would justify the plaintiff in stopping the work; whereas, the request was that no time of payment and no specific amount of money was fixed or agreed upon by the parties in their contract for putting up the buildings, and that the contract, as testified to by the plaintiff, shows that the amount of money which defendant should pay would be optional with her, and that plaintiff could claim no breach on the part of the defendant if she refused to pay the $1,000, and that he had no right upon such refusal to quit work before the buildings were completed.

We cannot agree with counsel for defendant in his interpretation of the contract as stated by the plaintiff, or that the defendant was under no obligation to pay any part of the money, as no amount was fixed upon, and no time of payment agreed upon. The plaintiff testified that all the money except the $75 was to be paid as the work progressed, and that he told defendant at the time the contract was made that he must have his money as the work progressed to pay his men and to pay for the lumber; and that defendant then stated to him that he should have his money whenever he wanted it. It also appeared upon the trial that at the time when the plaintiff demanded the $1,000 the sum of $1,400 and upwards was due, and that the amount for lumber and material and labor exceeded the $1,000 which he demanded. We think, under the circumstances, the court was not in error in submitting to the jury the question whether the plaintiff was justified in quitting the job by reason of

the refusal of the defendant to pay him the $1,000 to enable him to complete his contract, though they may have found that he was not driven from the work by the agent of the defendant.

It is said by counsel for defendant, in his brief, that the court should not have left this question to the jury as to whether it was a breach of contract which would justify the plaintiff in stopping his work, as it was the province of the court, and not the jury, to construe the contract. If this were true, we think that under the contract as claimed by plaintiff the court might properly have said to the jury that, if they found the contract as plaintiff claimed, then upon the refusal of the defendant to pay the $1,000 plaintiff was justified in quitting the job; so that the defendant is in no manner injured by the charge of the court as given.

It is contended by counsel for defendant, further, that the contract as claimed by plaintiff was not apportionable, and no action could have been maintained upon such breach. In *Grand Rapids & Bay City R. R. Co. v. Van Dusen,* 29 Mich. 431, it was held that continued and repeated defaults in payment according to the provisions of the contract justified the contractors in abandoning work before its completion. In that case the contract was written, and provided for an estimate to be made each month, and payment of 90 per cent. of the estimate by the middle of the following month. Under the contract in the present case the plaintiff was to be paid as the work progressed, for the purpose of enabling him to pay for his lumber and material and to pay his workmen. No claim was made by the defendant at the time plaintiff made the demand for $1,000 that there was not that amount due for lumber and material and wages of the men, but the sole ground of her refusal was that by

89 MICH.—25.

the terms of the contract she understood she was not to pay any portion of the money until the buildings were fully completed. We think these questions were left fairly to the jury under the charge of the court. Upon the other branch of the case the jury were instructed, as before stated, that, if the plaintiff abandoned the work before completion, he could not recover, unless he was prevented from finishing it by the wrongful action of the defendant or her agent.

Upon the question of damages the court gave the jury certain instructions, which are also complained of by defendant's counsel. This portion of the charge set forth to the jury in great detail the defects in the buildings of which defendant complains, and the jury were properly instructed upon that question, and they were told that, if they found that the plaintiff was entitled to recover, he would be entitled to recover the difference between the contract price and what it would cost him to complete the building according to the specifications. The jury were also told by the court that if they found that the plaintiff abandoned the contract without justification, and that from November until the following spring was an unreasonable time to wait before offering to complete it, he would not be entitled to recover anything whatever.

We are of the opinion that upon the whole record the case was fairly tried and submitted to the jury upon a charge which was fair to the defendant, and in which we find no error.

The judgment must be affirmed, with costs.

MORSE, McGRATH, and GRANT, JJ., concurred. CHAMPLIN, C. J. did not sit.