495 P.2d 28

W. Ray HARDY and Frank W. Burningham, Executors of the Estate of Bertha Stahle Hardy, also known as Bertha S. Hardy, Deceased, Plaintiffs and Respondents,

v.

James S. HENDRICKSON and James S. Hendrickson as Administrator of the Estate of Edna Hardy Hendrickson, Deceased, Defendants and Appellants.

No. 12354.

Supreme Court of Utah.

March 16, 1972.

1. 19 Utah 2d 174, 428 P.2d 163.

James E. Faust, Salt Lake City, for defendants and appellants.

Keith L. Stahle, Bountiful, for plaintiffs and respondents.

ELLETT, Justice.

Bertha S. Hardy, hereinafter called the mother, died testate in April 1968, naming Edna Hardy Hendrickson, hereinafter called the daughter, as one of the executors of her estate. The daughter died in October 1968, but had filed an inventory in the estate of her mother prior to that time.

This suit was instituted to recover some stocks and bonds and some funds held in ostensible joint tenancy by the mother and the daughter.

All of the property originally belonged to the mother; but due to age and illness, the mother caused or permitted funds to be placed in joint accounts with the daughter. When the inventory was filed in the mother's estate, the daughter did not claim the joint funds or the stocks and bonds as her own property but listed them as assets in the mother's estate. It was after the death of the daughter that this dispute arose. James S. Hendrickson, the surviving husband of the daughter, now claims all of the stocks, bonds, and joint funds on behalf of himself and his children.

The trial court heard the testimony of the witnesses regarding the condition of the mother, including that of a doctor who testified to the physical and mental condition of the mother at and prior to the time of the creation of the so-called joint accounts. The court was aware of the law relating to joint tenancy accounts as laid down by this court in the case of Beehive State Bank v. Rosquist, 21 Utah 2d 17, 439 P.2d 468 (1968), wherein it was held:

. It seems to us that what all of the recent cases in Utah have been trying to say is this:

If the contract between the parties ostensibly creates a joint tenancy relationship with full right of survivorship, there arises a presumption that such is the case unless and until some interested party shows under equitable rules that the contract should be reformed to show some other agreement of the parties or that the contract is not enforceable because of fraud, mistake, incapacity, or other infirmity.

We hold that the law is as above indicated.

The trial court made the following findings of fact:

*   *   *   *   *   *

8. That the Court finds on the basis of clear and convincing evidence that the joint checking account in the Bountiful State Bank was opened for the sole purpose of allowing Edna Hendrickson to handle the business affairs of Bertha Hardy, her mother, and that Edna Hendrickson made no claim of ownership by reason of the joint cards; that this would apply also to the Prudential Federal Savings & Loan account; that the Savings & Loan account was not opened

by Mrs. Hardy as a joint account, but was opened by Mrs. Hendrickson with Mrs. Hardy's funds; that this was meant to be no more than a method of obtaining greater interest on the monies, and that there is no evidence to indicate that Mrs. Hardy even knew it was being done.

\* \* \* \* \* \*

12. That the Court finds the evidence to be clear and convincing that Mrs. Edna Hendrickson was placed on Mrs. Hardy's checking account for the sole purpose of assisting Mrs. Hardy in paying her obligations after she was partially paralyzed by a stroke and incapable of handling her own business affairs; that the funds in the Prudential Federal Savings & Loan Association are actually the funds of the checking account, and the placing of the name of Mrs. Edna Hendrickson on the Savings & Loan account was Mrs. Hendrickson's act only, and nothing indicates that Mrs. Hardy even knew her $5,000.00 was being used to open said account, and the Court finds that she did not know.

\* \* \* \* \* \*

■ The findings of the trial court are tantamount to a reformation of the joint tenancy agreements, and the evidence supports the findings.

■ As to the stocks and bonds, they were in the name of the mother, and the only claim of ownership by the defendant is based upon a shorthand note written by the daughter upon the envelope in which they were enclosed reading: "Mom gave these to me." This self-serving writing is insufficient to transfer title.

■ On appeal the evidence is viewed in the light most favorable to sustain the lower court, and the findings will not be disturbed unless they are clearly against the weight of the evidence or it manifestly appears that the court misapplied the law to the established facts. Shaw v. Jeppson, 121 Utah 155, 239 P.2d 745 (1952); Stanley v. Stanley, 97 Utah 520, 94 P.2d 465 (1939).

We are fortified in our belief that the trial court properly ruled in this matter by the fact that the daughter during her lifetime never made any claim to be the owner of the joint accounts or the stocks and bonds now in dispute.

The judgment is affirmed with costs awarded to the respondents.

TUCKETT and CROCKETT, JJ., concur.

CALLISTER, Chief Justice (dissenting).

I respectfully dissent. I cannot agree that the quotation from the paragraph in Beehive State Bank v. Rosquist, 21 Utah 2d 17, 439 P.2d 468 (1968), represents a complete statement of the ruling case law in this jurisdiction as to joint bank accounts.

The majority opinion proceeds on the assumption that a written contract may be reformed on the assertion that it does not rep-

resent the intention of the parties. In Hobbs v. Fenton, 25 Utah 2d 206, 208–209, 479 P.2d 472, 473 (1971), this court stated:

The bank account and stock certificates constituted valid enforceable written contracts. There were two grounds upon which plaintiff could assert his claim: one, the contract was void because of fraud, mistake, incapacity, or other infirmity; or, second, he was entitled to the equitable remedy of reformation of a written instrument because such instrument failed through accident, mistake, or fraud, or a combination of fraud and mistake to express the real agreement or intention of the parties. The latter case is premised on the theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake or mistake and fraud, some provision was omitted or mistakenly inserted, and the action is to change the instrument as to conform it to the contract upon which the parties had agreed.

In the instant action there were no allegations, proof, or findings that through accident, mistake or fraud that the written agreement failed to express the real agreement or intention of the parties. The language in First Security Bank of Utah v. Burgi, 122 Utah 445, 454–455, 251 P.2d 297, 301 (1952), is particularly appropriate in the instant action:

. . . where an intention to create a joint account is clearly expressed in a written contract executed by the parties, which remains unaltered, and there is no evidence of fraud, undue influence, mistake, or other infirmity, *the question of intention ceases to be an issue* and the courts are bound by the agreement. . . Likewise it is true that the fact that all the funds are contributed by one of the parties will not prevent the creation of a joint tenancy in the account if all of the essentials for the creation of such an estate exist. . . . [Emphasis added.]

In the instant action, the trial court was precluded from finding the intention or purpose of the parties in creating the joint account, until there was established a ground to grant reformation of the contract.

HENRIOD, Justice.

I concur in the dissent of Mr. Chief Justice CALLISTER, and add the following:

In a concurring-in-part and dissenting-in-part opinion in Beehive v. Rosquist, 26 Utah 2d 62, 484 P.2d 1188, April 14, 1971, I commented that "The weakness in the rule is the first phrase, that *'If* the contract between the parties *ostensibly* creates a joint tenancy . . . there arises a *presumption* that such is the case unless . . .' It seems to me that *'if'* and *'ostensibly'* beg the question. There having been concededly a joint account contract created in clear, unmistakable language, it would seem that it would not be subject to an attack by parol, since the intentions . . . clearly are

stated, and there is no uncertainty or ambiguity to resolve."

I think the above-quoted language is apropos in the instant case. If the contract is clear, no presumption is needed to make it effective or more nearly clear,—and certainly there is no presumption that it is ineffective, or that it is unclear or requires any stimulant or additive to breathe life into what is already breathing.