David J. WAGSTAFF, dba Triangle Drywall
Company, Third-Party Plaintiff
and Respondent,

v.

REMCO, INC., a Utah Corporation, et al.,
Third-Party Defendants and
Appellants.

No. 13690.

Supreme Court of Utah.

Sept. 24, 1975.

Patrick H. Fenton, Clear City, for appellants.

Carl T. Smith, Ogden, for respondent.

## CROCKETT, Justice:

David B. Wagstaff, dba Triangle Drywall Company, a subcontractor, sued defendant Remco, Inc., a general contractor, for amounts due on the construction of The Village Apartments, a 60-unit apartment complex in Cedar City, in the summer of 1972. Remco denied indebtedness; counterclaimed that Triangle had caused Remco damages by failure to perform; and by wrongfully filing and refusing to cancel a labor and materialman's lien.[1] Upon a plenary trial, the court found the issues in favor of Wagstaff and rendered a judgment for $4,064.94 (plus interest and attorney's fees)[2] and no cause of action on Remco's counterclaims. After appropriate attacks upon the findings and judgment by Remco, it took this appeal, further assailing them mainly on the ground that they do not comport with the evidence.

In May of 1972, the parties discussed the prospect of Wagstaff doing all of the drywall work on the apartment complex. Among other things, Mr. Wagstaff indicated to Remco that he could, at a very favorable price, purchase all of the necessary materials in one shipment and make prompt payment therefor. A written agreement was drawn up and executed May 19 by which Wagstaff was to do the work and furnish the materials for the sum

1. This action was originally brought by John P. Jordan, who was later joined by numerous other lien claimants on this job. All have been disposed of and are not now of concern in this proceeding except Wagstaff, dba Triangle Drywall, whom we denominate as plaintiff.

2. U.C.A.Sec. 38-1-18 provides: "In any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee . . ."

of $47,383, the work to be completed by August 1, 1972.[3] A key provision required Remco to make:

> Payment for sheetrock to be made approximately June 10, 1972, upon inspection by lender. Full payment to be within 30 days in any event.

Wagstaff purchased the materials for $20,000, which were delivered to the project as agreed, and began his work. But Remco did not make the payment of the $20,000 until the latter part of July, thus more than a month after the promised date. It is Wagstaff's position that the difficulty has arisen herein because when Remco breached its contract by failing to make the payment as promised, Wagstaff was unable to perform and was forced to leave the job without completing it; and he filed a materialman's lien stating indebtedness of $13,216.61.

It is undoubtedly true, as Remco contends, that a mere delay of a month by one party in making a payment on a contract would usually result in damages only, but would not justify the other party in abandoning the contract. However, that may depend upon the circumstances. The trial court believed Wagstaff's version of the transaction: that the covenant of payment of the $20,000 by June 10th, or in any event within 30 days, was understood and agreed by the parties as essential to Wagstaff's ability to perform; and that upon Remco's failure to make payment, Wagstaff was unable to perform as he had agreed; and that the latter was justified in leaving the project. We think the principle is correct that where the failure to pay an installment as provided in a construction contract is such a substantial breach that it materially impairs the contractor's ability to perform, he has the right to consider the contract at an end, to cease work,

and to recover the value of the work already performed.[4]

It is Remco's contention that Wagstaff "was to do all of the drywall work on the 60-unit apartment complex for the sum of $47,383." But that when Wagstaff left the job it was completed to the extent of $39,218.35, which debt Remco had incurred to Wagstaff; that Remco was compelled to have it completed otherwise, for which it was required to incur expenses totaling $10,748.27, or a grand total of $49,966.62 to complete the job; and thus $2,583.62 more than it had agreed to pay Wagstaff for completing it. Wherefore, Remco avers that because Wagstaff was at fault in failing to perform its contract, Remco should be entitled to offset these sums in the accounting as to what it owed Wagstaff.

Notwithstanding the trial court's ruling that Remco had been guilty of breach for failing to make the large initial payment as set forth above, it also ruled, (and we do not disagree) that Remco was entitled to offset against Wagstaff's contract price, the amount of expenses reasonable and necessary to complete the job. Upon disputed evidence, the trial court found that the reasonable value of the additional expenses so incurred by Remco was $4,099, and allowed that as an offset in its accounting with Wagstaff. This produced the result of the judgment of $4,064.94 owed by Remco to Wagstaff. Remco's attack upon this accounting is that it should have been allowed the whole amount of its additional expenditures.

We think it is unnecessary and would serve no useful purpose to set forth herein the various items and accounts, as claimed by Remco, and the lesser amounts as claimed by Wagstaff, to be the reasonable and properly allowable amounts. With respect to Remco's contention as to

---

3. On this review two basic rules favor plaintiff Wagstaff: (1) That we assume the trial court believed the evidence which support its findings; and (2) that Remco having drawn the agreement, if there is any uncertainty therein it is resolved against Remco. See

*Hardy v. Hendrickson*, 27 Utah 2d 251, 495 P.2d 28.

4. See *Scheible v. Klein*, 89 Mich. 376, 50 N.W. 857; *Jones, et al. v. City of New York*, 47 App.Div. 39, 62 N.Y.S. 284.

its expenditures, this comment is applicable: The fact that it may have actually spent the money on some of these accounts for labor and materials does not necessarily compel a finding that it is entitled to reimbursement therefor. It is only entitled to reimbursement, and offset on the account, for whatever the trial court believed upon competent evidence was the reasonable and necessary amount for such labor and materials. Beyond that, we direct attention to the traditional rules of review: that we look at the evidence in the light favorable to the findings and under the assumption that the trial court believed those aspects of the evidence favorable to and supportive of them; and the usual corollary to this: that if when so viewed there is any reasonable basis in the evidence to support the trial court's findings and judgment they shall not be reversed.

■ In this case there is this additional observation to be made: The assertion of Remco that it incurred certain expenses in finishing the job, which it claims should therefore be deducted from its obligation to Wagstaff, is analogous to an allegation of payment. Thus it is an affirmative defense. Upon it Remco had the burden of proof.[5] Therefore, if its evidence failed to so convince the trial court, we could properly overturn his ruling and compel findings in Remco's favor only if the evidence is so persuasive to that effect that all reasonable minds must necessarily so find.

■ Applying the rules above stated to this appeal, it is our opinion that the defendant Remco has not borne its burden as the appellant to persuade this court that the findings and judgment of the trial court should be overturned, except only as to two items: $758 paid to the Southern Utah Lumber Co. on which the trial court

allowed a credit of $55.51, leaving a difference of $702.49; and another of $272.65 paid to Iron County Lumber Co. Mr. David Cranmer testified that these materials were used on the job; and he presented the documentary evidence to support his testimony. Wagstaff does not make a defense that they were not so used on the job, nor that the price was excessive. The defense asserted is that he did not order nor authorize the ordering of these materials. That defense is not valid. Inasmuch as it appears that the materials were ordered for and used on the job, they should be charged against its completion.

■ Remco also charges that Wagstaff damaged it by wrongfully filing a lien on the property; and further, that Wagstaff refused to release it upon tender of payment. Wherefore, Remco alleges that it is entitled to recover damages at the rate of $20 per day as provided by Section 38–1–24, U.C.A.1953.[6] The first pertinent observation is that this is a penalty statute; and therefore one who seeks to invoke it must comply with its requirements with particularity.[7]

■ In order to establish a basis for recovery on such a cause of action the party would have to establish (1) that the lienor (Wagstaff) has filed a claim of lien knowing it to be false or excessive; (2) that if money is owed, the property owner (Remco) has tendered the proper amount for the release thereof; (3) that the tender was rejected and the lienor refused to release the lien; and (4) that the owner has suffered damages therefrom.[8]

■ This issue is disposed of by the recital of these propositions: According to the findings of the trial court, even though the lien claim filed by Wagstaff may have been in excess of the actual amount then

5. ·That payment on the account requires affirmative proof see Rule 8(c), U.R.C.P.; *Southern Box & Lumber Co. v. Home Chair Co.*, 250 N.C. 71, 108 S.E.2d 70.

6. Sec. 38–1–24, U.C.A.1953, provides that if the property owner tenders payment of the amount of the lien, plus costs and fees for cancellation, the lien claimant must release

the lien of record within ten days, and upon his failure to do so, shall forfeit $20 per day until the lien is released of record.

7. *Einerson, etc. v. Central Lumber and Hardware Co.*, 14 Utah 2d 278, 382 P.2d 655.

8. *Cf. Mercer Steel Co. v. Park Constr. Co.*, 242 Or. 596, 411 P.2d 262; see 51 Am.Jur.2d, Liens, Secs. 49 and 50.

due, there was a bona fide dispute or uncertainty as to that amount. Therefore the court was not compelled to find that he wilfully filed an excessive lien. Moreover, the evidence does not compel a finding that there was an actual proffer by Remco of the correct amount. Accordingly, the trial court was justified in rejecting Remco's asserted counterclaim for the alleged wrongful filing of the lien.

On the basis of our discussions herein, and in the light of the traditional rules of review giving verity to the findings and judgment of the trial court, it it our decision that they should be affirmed, except only as to the two items (1) the amount paid to Southern Utah Lumber Company, a difference of $702.49; and (2) the item of $272.65 paid to Iron County Lumber Company, for which Remco should be allowed credit. With this modification, together with the appropriate adjustments in interest and attorney's fees, the judgment is affirmed. The parties to bear their own costs.

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.