Peggy BEZNER, Plaintiff and Respondent,

v.

CONTINENTAL DRY CLEANERS, INC., a corporation, and Bert Harry, Defendants and Appellants.

No. 14119.

Supreme Court of Utah.

April 6, 1976.

John B. Anderson, Salt Lake City, for defendants and appellants.

E. H. Fankhauser, of Cotro-Manes, Warr, Fankhauser & Beasley, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Plaintiff Bezner sued in fraud to rescind her purchase contract of a business known as the In-And-Out Dry Cleaners at 15th South and 15th East in Salt Lake City. The named defendants, Continental Dry Cleaners and its president and owner Bert Harry, denied the allegations of fraud and counterclaimed for payments claimed to be owing on the purchase contract and rent on the lease. Upon a plenary trial a jury answered interrogatories favorable to the plaintiff's contentions and the trial court entered judgment for the plaintiff, rescinding the contract and awarding her damages in the sum of $9,400. Defendants appeal.

Defendants contend that the trial court erred in refusing to rule as a matter of law (1) that there was no basis in the evidence to justify a finding of fraud; and (2) that by continuing in the business for about ten months the plaintiff should be deemed to have waived any claim of fraud.

On October 2, 1972, plaintiff (and Richard Steadman, who later assigned to plaintiff), after some discussions and negotiations entered into a contract of purchase and took over the defendants' dry cleaning business. The principal representation made, and the one which is of concern here, is that Mr. Harry, its owner and president, had repeatedly stated in their discussions that the business was grossing about $1,000 per week. When asked about the records, he answered that his manager had been "stealing him blind" and that he therefore did not have accurate records reflecting the business operation. It was in reliance upon these statements and others concerning the prosperousness of the business that the plaintiff was induced to make the purchase. The contract provided for a payment of $40,000, with $10,000 down, and the balance in monthly installments of $371.97 which would pay out the

principal, with eight and one-half per cent interest on deferred balances, in ten years.

Plaintiff entered into the operation of the business, but found that the gross receipts were about $400 to $500 per week, thus less than half of the $1,000 that had been represented. But she assumed that perhaps this was due to her newness in that operation and that it would be increased to its normal volume. She tried to accomplish this during the fall and winter months but was unable to do so. In June of 1973 records were found in a box in the basement which indicated that the representation of the defendant about the income of the business had been false: that even during defendants' operation it had only been taking in around $400 to $500 per week. This gave support to her increasing belief that the low income was not the fault of the service she was rendering, or of her management, but that she had been lied to about the income of the business and its potential. She then attempted to contact her attorney, who happened to be away at the time. After his return, in July 1973, he wrote a letter to the defendants asserting the misrepresentation and that the plaintiff wanted to rescind the transaction. No further significant action occurred until September 21, 1973, when the defendants served a notice on the plaintiff to quit the premises. Pursuant thereto the plaintiff vacated the premises and commenced this action on October 1, 1973.

The controversy in this case follows a pattern not uncommon in cases of fraud where charges of this character are made: Plaintiff says: You lied to me about materials facts. Defendant rejoins: Well, what of it? You should not have believed me, but as a prudent person should have found out the facts for yourself. Furthermore, you waited ten months and therefore waived any claim of fraud.

Concerning defendants' argument that there is no evidence to justify a finding of fraud, this is to be said: In its instructions to the jury the trial court carefully and accurately set forth the elements of fraud;[1] and told them that the burden was upon the plaintiff to prove each and all of those elements by clear and convincing evidence; and conversely: that if she failed to prove any one of them by that degree of proof, she had not established her cause of action for fraud; then submitted to the jury the following:

PROPOSITION No. 1

That the plaintiff has proved by clear and convincing evidence each and every element of fraudulent misrepresentation as set forth in Instruction No. 20.

To which the jury answered:

|  TRUE  |  |
| --- | --- |
| True | False |

Defendants' principal argument against this finding is that the plaintiff did not exercise reasonable prudence and diligence in discovering the facts. In assuming, as we do, that the jury believed the plaintiff's evidence,[2] and could see the situation in this light: that the defendants had lied to and deceived her about material facts concerning the business. Indeed a most vital and important fact pertaining to any business: that is, the money it will produce. Further, that when the plaintiff attempted to ascertain such fact, the defendant engaged in active concealment by making excuses that he could not produce the records. Whereas, this was also false, because it was later learned that accurate records had been kept by Mr. Harry's wife and could have been produced. In view of these facts, defendants' urgence that plaintiff should have learned what the facts were is indeed intriguing to one's sense of justice. The law does not generally approve nor give any advantage to one who

1. As set forth in our cases of *Stuck v. Delta Land and Water Co.*, 63 Utah 495, 227 P. 791; and *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273.

2. See *Hardy v. Hendrickson*, 27 Utah 2d 251, 495 P.2d 28; *Foster v. Blake Heights Corp.*, 530 P.2d 815.

intentionally deceives another, obstructs him from learning the facts, and then attempts to impute fault and responsibility to the other party for believing him.[3]

■ In regard to waiver, the evidence would justify a view that: the plaintiff was taking over a new business and where it took some time for her to become aware that the small volume was not the fault of her methods but that the business as represented by the defendants simply wasn't and never had been there. The old folk saying has application to a person in such a situation: "You're damned if you do and you're damned if you don't." If one complains too early its: "Don't give up so quickly. You're new in the business, give it a chance." And if that course is followed: "You should have complained earlier, you have now waived your right to do so."

■ We do not question the correctness of the defendants' averments that where one has entered into a contract where fraud may be involved, and after having knowledge of those facts, continues to perform or otherwise ratify the contract, he is deemed to waive the claim of fraud. Nor that one who claims to be defrauded must exercise reasonable prudence and diligence in discovering it and seeking a remedy therefore, or be precluded from doing so. In regard to the defendants' contentions in that regard and their requested instruction on that subject, these observations are pertinent: First, the matter of waiver is ordinarily an affirmative defense which should be pleaded,[4] or the waiver itself is deemed to be waived.[5] No such defense was pleaded here. Second, and more important: the manner in which the issues were submitted to the jury made it sufficiently clear to them that the plaintiff had the duty to exercise reasonable dil-

igence in discovering the fraud and seeking a remedy therefor. Its Instruction No. 20, which set out the elements of fraud, included the general statement: the plaintiff must have acted as a reasonable person under the circumstances. This was more specifically covered in Proposition No. 2:

That the Plaintiff Peggy Bezner, after having learned that the cleaning business had not been grossing approximately $1000 per week, continued to operate the business as her own *and failed to notify the defendants with reasonable promptness* her decision to disaffirm and rescind the contracts of sale of the business and the lease. [Emphasis added.]

To which the jury answered:

| | FALSE |
|---|---|
| True | False |

■ Notwithstanding our prerogative of reviewing both the facts and the law in equity cases,[6] the general rule which we frequently have occasion to state and apply is that we indulge the presumption of verity to the findings of a jury and the actions of the trial court thereon; and that we will not disturb them unless it appears that there is substantial prejudicial error, or that the evidence so clearly preponderates against them that we are persuaded that an injustice has resulted.[7] In this case the jury and the trial court appear to have believed that the evidence was clear and convincing, that the defendants made wilful, knowing and false representations to the plaintiff of material facts and that she acted as a reasonable person in reliance thereon. The result is that the transaction is rescinded: Mr. Harry gets his business back, plus a reasonable allowance for rental of the business and equipment during the plaintiff's operation thereof. The plaintiff gets the money back she had in-

---

3. 37 Am.Jur.2d, Fraud & Deceit, § 247.

4. See Rule 8(c), U.R.C.P., requiring such pleading.

5. Rule 12(h), U.R.C.P.: "A party waives all defenses and objections which he does not present . . . ."

6. Sec. 9, Art. VIII, Utah Const.

7. *Alldredge v. Alldredge*, 119 Utah 504, 229 P.2d 681; *Stanley v. Stanley*, 97 Utah 520, 94 P.2d 465.

vested in the business, less the reasonable rental allowance to the defendants. We are not persuaded that under the rule just stated any such error or injustice has resulted that the judgment should be reversed.

Plaintiff cross-appeals, contending that the damages awarded of $9,400 were inadequate and that upon rescission she should have been restored to her former position by an award of what she had paid on the purchase price, plus expenditures of $300 for damages caused by water leakage for which she avers the defendants should be held responsible. The same principles set forth herein as applicable to the defendants' appeal apply to the plaintiff's cross-appeal. It was but consistent with equity and good conscience for the trial court to allow the defendants an offset against the plaintiff of a reasonable rental for the business and equipment during the time she was in possession. Upon our survey of the record there is no basis upon which the plaintiff can demonstrate that the offset against her for that purpose was in error or unjust.

Affirmed. The parties to bear their own costs.

HENRIOD, C. J., and TUCKETT, ELLETT and MAUGHAN, JJ., concur.