Vernon S. CHEEVER and Charlie Garofolo, Plaintiffs and Respondents,

v.

Orval R. SCHRAMM and Harold L. Christensen, Defendants and Appellants.

No. 15147.

Supreme Court of Utah.

March 16, 1978.

Ray M. Harding, American Fork, for defendants and appellants.

Cullen Y. Christensen, Provo, for plaintiffs and respondents.

MAUGHAN, Justice:

Before us is an appeal from a judgment in favor of plaintiffs, who sued defendants for breach of contract. Defendants assert here that no contract came into existence, and even if it did, defendants were entitled to rescind; because of plaintiffs' fraudulent misrepresentations. Viewing the evidence in the light most favorable to plaintiffs,[1] we affirm the district court judgment. Costs to respondents.

Plaintiffs began an automobile repair business known as C & B Sports Car Service Center about September of 1975. They had Sisken Investment Company (hereinafter referred to as Sisken) construct a building and entered into a written five-year lease with Sisken for $725.00 per month. Plaintiffs borrowed $10,000.00 from Walker Bank and Trust Company with interest, which was used to purchase supplies and equipment. To attract customers, plaintiffs periodically advertised in the local newspapers and on the radio. In addition to plaintiff Garofolo, five mechanics were employed to service the business generated. From October through December of 1975, the business grossed approximately $10,160 which, when added to the $10,000.00 loan amount, approximately equaled the total expenses of the business for that time.

Because plaintiff Garofolo was required to move to a warmer climate for health reasons, the plaintiffs decided to sell the business. In response to an advertisement, defendants met with plaintiffs in January and discussed the business. Defendants inspected the building and inventory on at least two occasions, and were given access to the books of the business and the lease agreement with Sisken. On February 1, 1976, the parties signed an Earnest Money Receipt and Offer to Purchase form which plaintiff Cheever had filled in. The agreement provided that defendants would pay plaintiffs $6,000.00, including a $200.00 deposit on February 1, and would assume the

1. *Hardy v. Hendrickson*, 27 Utah 2d 251, 495 P.2d 28 (1972).

loan from Walker Bank and the Sisken lease.

The parties worked together in the shop for the first and second weeks of February; on February 9 defendants actually took over the operation of the business, and on February 18 paid plaintiffs the balance of $5,800.00.

Pursuant to the agreement, a new lease, identical to plaintiffs' lease with Sisken, was drawn for defendants. They objected to a provision giving Sisken a second mortgage on their homes, and Sisken agreed to delete that paragraph. When the lease was again submitted to defendants, they refused to sign it. In the latter part of March, defendants ceased operating the business and vacated the premises, giving rise to this action.

Defendants make two main contentions on appeal. First, they assert that several conditions precedent to the contract were not met, preventing any contract from coming into being. These conditions are:

1. That Sisken accept defendants as tenants;

2. That plaintiffs' lease be "taken over" by defendants;

3. That the contract or instrument of conveyance be made on the approved form of the Utah Securities Commission;

4. That an inventory of equipment and supplies be furnished;

5. That plaintiff Garofolo stay on for thirty or forty-five days to assist in operating the business.

The agreement stated that the offer was "subject to" Sisken accepting defendants as suitable tenants "to take over" the lease which plaintiffs held. Defendants were given a lease exactly the same as plaintiffs' lease, which they refused to sign. After the lease was modified to delete the offending paragraph, defendants still refused to sign, insisting that the name C & B Sports Car, Inc., be substituted for their names as lessees. The evidence clearly established that the lease presented to defendants was signed by an officer of Sisken, and that

Sisken had accepted defendants as suitable tenants to "take over" plaintiffs' lease. Defendants were obligated under the agreement to assume plaintiffs' position as lessee if Sisken accepted them; they refused to do so even though they were offered a more favorable position as lessee than were plaintiffs.

█ The Earnest Money Receipt and Offer to Purchase contained a provision stating, "Contract of sale or instrument of Conveyance to be made on the approved form of the Utah Securities Commission . . . ." Defendants assume that this is a condition precedent to the formation of a valid contract between the parties. This assumption makes little sense, however, since this sentence in no way indicates it is a condition, and there is no testimony a condition was implied. A simple statement or stipulation in a contract is not necessarily a condition to a party's duty of performance. The intention to create a condition in a contract must appear expressly or by clear implication.[2]

█ The same response applies to defendants' argument that the furnishing of an inventory of supplies and equipment was a condition precedent. There is simply no evidence indicating the intention of the parties that such a condition precedent exist. Additionally, plaintiffs denied ever agreeing to furnish an inventory at all.

█ Addressing defendants' assertion that plaintiff Garofolo was to provide thirty to forty-five days of assistance, the record contains evidence the defendants informed Mr. Garofolo they would not need his help after all; the trial court could reasonably conclude defendants discharged Mr. Garofolo from any obligation he may have had. In view of the above, the trial court's decision that a contract existed between the parties was not against the great weight of the evidence.

Defendants' second main assertion in this appeal is that plaintiffs fraudulently misrepresented the status of the business to defendants. Specifically, these misrepresentations are:

2. *McMillion v. McMillion,* 522 P.2d 125 (Colo. App. 1974).

1. The business was grossing $10,000 per month;

2. The business was so good that plaintiffs no longer needed to advertise;

3. The employees were being paid a commission;

4. The Walker Bank loan was in the amount of $9,400;

5. The value of the equipment was $12,000 to $14,000.

We have in the past stated that one claiming fraud must establish by clear and convincing evidence all of the following:[3] 1) that a representation was made; 2) concerning a presently existing material fact; 3) which was false; 4) which the one making the misrepresentation either a) knew to be false, or b) made recklessly knowing he had insufficient knowledge upon which to base such representation; 5) for the purpose of inducing the other party to act upon it; 6) that the other party acting reasonably and in ignorance of its falsity; 7) did in fact rely upon it; 8) and was thereby induced to act; 9) to its injury and damage. We agree with the trial court defendants have not met their burden of establishing these elements by clear and convincing evidence, which clearly preponderates against the findings of the trial court.

▬▬ Defendant Schramm testified plaintiff Cheever told him the business was earning a gross income of approximately $10,000 per month; the actual amount was around $3,500 per month. Neither party mentioned this alleged statement by Mr. Cheever again in the trial, but the plaintiffs denied making such a statement in their written statement of points and authorities submitted, before the court made its decision. Plaintiffs also testified defendants had opportunities to and did inspect the books of the business, which contained the record of gross receipts and expenses. Defendants rely on *Bezner v. Continental Dry Cleaners, Inc.*,[4] for the proposition that one who misleads another will not be heard to say that the party deceived should have found out the fact independently. In *Bezner*, the jury found the seller of a business had fraudulently misrepresented a material fact by telling the buyer the business grossed $1,000 per month when it in fact produced only $500 per month. We rejected the seller's claim on appeal that the buyer failed to act reasonably in discovering the truth of the statement. However, in that case the jury specifically found that the plaintiff had proved all the elements of fraud, whereas in the instant case the trial court concluded that defendants had not proved by clear and convincing evidence defendants were acting reasonably. The seller in *Bezner* not only repeatedly misrepresented the true income of the business, but also lied to the buyer regarding the business records, thus denying the buyer access to them. Defendants here had access to the business records, and actually inspected them at least once before obligating themselves. Although it is correct that a party is not required to independently ascertain the truth of every representation made in a transaction such as this, one claiming fraud must show he acted reasonably under the circumstances.[5] This requirement has also been stated in terms of the defrauded party having a "right to rely" upon the misrepresentation. *Johnson v. Allen*, 108 Utah 148, 158 P.2d 134 (1945), *Oberg v. Sanders*, supra note 3. The policy of this requirement is to discourage inattention to one's own interests. However, it should be emphasized that this policy should not be carried so far that the law would ignore positive acts of fraud practiced upon innocent persons. In determining whether one claiming fraud has reasonably relied upon a representation, factors such as the respective age, intelligence, experience, mental condition, and knowledge of each party should be considered, along with their relationship, their access to information, and the materiality of the representations.

---

**3.** *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273 (1952); *Oberg v. Sanders*, 111 Utah 507, 184 P.2d 229 (1947).

**4.** Utah, 548 P.2d 898 (1976).

**5.** *Bezner v. Continental Dry Cleaners, Inc.*, 548 P.2d 898 (1976).

■ Turning to defendants' assertions that plaintiffs misrepresented facts pertaining to their advertising, the manner in which the employees were paid, the amount of the loan from Walker Bank, and the value of the equipment and supplies, the record indicates conflicting testimony on all these points; but it does not appear the trial court's decision is against the clear preponderance of the evidence.

■ Finally, defendants contend that in any event, plaintiffs' damages are limited to the $200 deposit which they retained, according to the liquidated damages provision of the Earnest Money Receipt and Offer to Purchase and our cases construing this provision.[6] By its own terms, the clause operates only if "purchaser fails to pay the balance of said purchase price or complete said purchase as herein provided . . . ." Defendants did pay the full price of $6,000 to plaintiffs, so the question is, did defendants fail to complete the purchase as provided in the agreement? Again, we concur with the trial court, defendants did complete the purchase, in the circumstances of this case. Defendants had paid the total price for the business and operated it for more than a month before abandoning the premises. They had been accepted by the lessor as lessees, and had made a payment on the loan to Walker Bank. The liquidated damages provision was therefore inapplicable.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

---

6. See *Dowding v. Land Funding Limited*, Utah, 555 P.2d 957 (1976).